## Case No. 1,069.

### BARTH v. MAKEEVER et al.

[4 Biss. 206.][1]

Circuit Court, D. Indiana. May Term, 1868.

LIEN OF JUDGMENT—MARSHALING OF ASSETS—JURISDICTION—CONFLICT OF AUTHORITY.

1. A judgment rendered in the circuit court of the United States for the district of Indiana, is a lien from its date on all the lands of the defendant situated within the district. And if, after its rendition, the defendant acquires other lands in the state, the lien of such judgment instantly attaches on these lands also; and a sale of them by the defendant, made before execution issues on the judgment, does not divest the lien. And, in such a case, the purchaser of the subsequently acquired land cannot, as against a prior purchaser of the land on which the judgment became a lien at the moment of its rendition, insist that the officer shall first levy on and sell the lands held by

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

such prior purchaser before the subsequently acquired lands shall be levied on, and sold.

2. In a cause over which a national court has original jurisdiction solely by reason of the citizenship of the parties, if the rights and interests of third persons should become complicated with the litigation, either as to the original judgment, or any property in the custody of the court, or any abuse or misapplication of its process, and if no state court has power to determine and guard those rights and interests without a conflict of authority with the national court, the latter court will, from the necessity of the case, and to prevent a failure of justice, give such third persons a hearing irrespective of their citizenship, so far as to protect their rights and interests relating to such judgment or property and to correct any abuse or misapplication of its process, and no farther.

3. A bill is defective which does not give the full names of all the parties to whom it refers.

In equity.

Barbour & Jacobs, for complainant.
Wm. Henderson, for defendants.

McDONALD, District Judge. This is a bill in equity, filed by Sebastian Barth against John Makeever, Daniel S. Makeever, Ephraim Sayers, Thomas J. Sayers, Thomas Clark, Henry G. Ely, Edward E. Bowen, William H. McConnell, Ingram Little, Abraham Trounstine, Joseph Trounstine, and Charles Keiffer.

The defendant, John Makeever, has filed a disclaimer. The defendants, Daniel S. Makeever, Ephraim Sayers, and Thomas J. Sayers, have demurred to the bill. The other defendants have not yet entered an appearance.

The point now to be decided is whether the demurrer ought to be sustained.

Two points are made in support of the demurrer: first, that this court has no jurisdiction over the parties—second, that there is no equity on the face of the bill. We will examine these points in their order.

I. Has this court jurisdiction over the parties to the bill? The bill alleges that, on the 26th of June, 1858, said "Ely, et al," recovered in this court two judgments against said Clark—one for $771.90—the other for $760.24; that on the 20th of May, 1860, one "Day and Matlock" recovered in this court a judgment against said Clark for $2,278.86; that on the 22nd of November, 1860, said "Abraham Trounstine, et al," recovered in this court a judgment against said Clark for $1538.75; and that these judgments, from their dates respectively, were, and continue to be, liens on divers tracts of land situate in Jasper and Newton counties, Indiana, abundantly sufficient to satisfy said judgments, and then, and long afterwards, the property of Clark.

The bill avers that Clark, on the 3rd of May, 1861, became the owner by purchase of a tract of fifteen acres of land in Marion county, Indiana; and that he sold and conveyed the same, for valuable consideration, to the complainant, Barth, on the 4th of July, 1861.

The bill further alleges that, on the 9th of January, 1861, "Trounstine, et al," took out execution on their said judgment, and the same was returned replevied by "Wm. C. Pierce and M. P. Carr," as Clark's sureties; that on the 26th of June, 1861, another execution was issued on the same judgment which the marshal levied on several of said tracts of land in Jasper county; and returned the same not sold for want of bidders; that, on the 8th of December, 1863, a venditioni exponas was issued on the same judgment, and was returned "unsatisfied without a sale, having ascertained that Thomas Clark was and is not the owner of the land;" that, on the 16th of June, 1864, another fieri facias was issued on the same judgment, was levied on divers of said tracts of land in Jasper county, and was returned not sold; and that, on the 6th of February, 1865, another venditioni exponas was issued on the same judgment, and the return on it showed a sale of one of the parcels of land in Jasper county for $33.

The bill further states that, on the 26th of April, 1865, "Trounstine, et al," assigned their said judgment to the defendants, John Makeever, Daniel S. Makeever, and Ephraim Sayers; that, about the same time, said Ely assigned his said two judgments to said Ingram Little; and that thereupon all said assignees of said judgments, in consideration of $65, released the liens of said assigned judgments on a large portion of the land which had been levied on as aforesaid. But the bill does not state to whom the release was executed.

The bill, also, avers that in May, 1865, on the petition of John Makeever, Daniel S. Makeever, and Ephraim Sayers, this court set aside all said levies, except that on one tract of land.

The bill also avers that, on the 10th of June, 1865, another fieri facias was issued on the judgment in favor of "Trounstine, et al," to the marshal, who, at the same time, had in his hands two other executions on the two judgments rendered in favor of said Ely as above stated; and that by virtue of those three executions, the marshal levied on Barth's fifteen acres of land, and sold the same for $1150, to the said Ephraim Sayers, Thomas J. Sayers, and Daniel S. Makeever. But whether the marshal conveyed to them the land pursuant to this sale, is not stated in the bill.

The bill also charges that after the rendition of said judgments and before the said conveyance by Clark to Barth, the said John Makeever, Daniel S. Makeever, Ephraim Sayers, and Thomas J. Sayers became respectively owners by purchase from Clark of large portions of the lands, the levy on which had been set aside as aforesaid, of sufficient value to pay all said judgments; and that the obtaining of the execution of said release, and the procuring of said setting aside of levies, and the said levy on and sale of Barth's land,

were effected by them in fraud of Barth's rights, and were fraudulently intended by them to screen their own lands aforesaid from liability to said judgments and wrongfully to subject Barth's to the payment thereof.

The object of the bill evidently is to show that the judgments in question became liens on all said lands in Jasper and Newton counties before they became liens on the after-acquired land of Clark which he sold to Barth; that therefore those lands ought to have been levied and sold to satisfy said judgments before resort was had to Barth's; that said order setting aside the first levy, as well as said release, was a fraud on Barth; and that consequently the levy and sale of Barth's land was, under the circumstances, an abuse of the process of this court, as well as a fraud on him.

The bill attempts to excuse the complainant's apparent negligence in not earlier urging these objections to said proceedings, by averring that he is a man of foreign birth, and speaks and understands our 'anguage very imperfectly, and was utterly ignorant of the existence of these proceedings till within a few days before he filed his bill.

The bill prays that said levy and sale of Barth's land be set aside, and for other relief.

The bill is silent as to the citizenship of the parties.

The complainant evidently founds his claim on the suppositions, first, that the release alleged frees his lands from the lien of the judgments, at least to the extent of the value of the property released; and, secondly, that the Jasper and Newton county lands were primarily liable for the satisfaction of the judgments, and therefore the sale of Barth's land under the circumstances, was a misapplication and abuse of the process of the court. As to the release, however, as the pleadings now stand, it is entitled to no consideration, because the bill does not show to whom it was executed. But as to the second ground of the claim, namely the primary liability of the lands in Jasper and Newton counties, if, under the facts stated, the law creates such primary liability, it becomes a very serious question whether the sale of Barth's land first was not such a misapplication and abuse of our process as to give us jurisdiction to redress the wrong even as to parties over whom we could not take original jurisdiction for the want of proper citizenship.

But, under the facts stated, does the law create a primary liability against the Jasper and Newton county lands, and only a secondary liability as to the Barth land? This question must be answered by a proper construction of the Indiana statutes relating to judgment liens on lands. For the acts of congress are construed as adopting those statutes. Simpson v. Niles, 1 Ind. 196; Doe v. Shrew, [Shrew v. Jones, Case No. 12,818;]

Ward v. Chamberlain, 2 Black, [67 U. S.] 430.

Under the Indiana statutes, it is well settled that judgments not only bind the lands of the debtor owned by him at the rendition thereof, but also his subsequently acquired lands from the moment of their acquisition. Michaels v. Boyd, 1 Ind. 259.

If the judgment liens had attached on all the lands in question at the same moment, and if John Makeever, Daniel S. Makeever, Ephraim Sayers, and Thomas J. Sayers had purchased a part of them from Clark before Barth made his purchase, it would be clear that Barth's land would have to go first to satisfy the judgments. For it is a rule, both as to mortgage and judgment liens, that where a debtor sells portions of the lands bound by a lien to different persons and at different times, the parcels thus sold will be liable to discharge the lien in the inverse order of such sales. 4 Kent, Comm. 179, note b; Aiken v. Bruen, 21 Ind. 137. But it is insisted by the complainant that this rule is inapplicable to the present case; and he claims that another rule equally well settled does apply, namely, that when a judgment exists against a man, and after its rendition he acquires lands and sells them before any execution issues on the judgment, the purchaser takes them clear of any judgment lien. And it must be admitted that this rule is strongly supported by the cases of Colhoun v. Snider, 6 Bin. 135, and Roads v. Symmes, 1 Ham. [1 Ohio,] 281. But we can hardly consider these cases as authority on the point in question; for they were made on statutes materially different from the Indiana act touching judgment liens. Indeed, upon the authorities above cited, we must regard it as settled law in this state that judgment liens attach on subsequently acquired lands at the date of their acquisition. The question whether a conveyance of such lands by the debtor before execution issues on the judgment destroys the lien, however, has not been settled here; but it is a question which seems to us to admit of very little doubt. Surely when a judgment lien once attaches on subsequently acquired land, it vests such a right in the creditor as cannot, without his act or consent, be divested by the voluntary act of the debtor conveying the land to a stranger. The circumstance, therefore, that Clark conveyed this land to Barth before the execution issued cannot help the complainant.

But it is urged in support of the bill, that as the judgment liens on the Barth land are younger than those on the other lands in question, the latter lands must be deemed primarily liable to the satisfaction of these judgments, and must, therefore, be first levied and sold for that purpose, before a seizure and sale of the Barth land. This, however, seems to us to be a mere assumption. We have found no authority in support of it. We see no good reason for it. We see no

good reason why, because a judgment lien attaches on one piece of land earlier and on another later, the former must bear the whole burden till it is exhausted, before the latter shall be touched.

Now, as the bill contains no averment touching the citizenship of the parties to it, it is obvious that our jurisdiction over the parties must, irrespective of their citizenship, depend upon the subject matter of the bill. And the point insisted on as this subject matter is, that the bill shows a misapplication and abuse of the process of this court which we have jurisdiction to correct without regard to citizenship. If, indeed, the bill does show such misapplication and abuse, we should entertain no doubt of our jurisdiction. In the case of Conwell v. White Water Valley Canal Co., [Case No. 3,148,] decided at the present term, we laid down a rule on this subject to which we are disposed to adhere. It is this: "In a cause over which a national court has acquired jurisdiction solely by reason of the citizenship of the parties, if the rights and interests of third persons should become complicated with the litigation, either as to the original judgment, or any property in the custody of the court, or any abuse or misapplication of its process; and if no state court has power to determine and guard those rights and interests, without a conflict of authority with the national court; the latter court will, from the necessity of the case, and to prevent a failure of justice, give such third persons a hearing irrespective of their citizenship, so far as to protect their rights and interests relating to such judgment or property, and as to correct any abuse or misapplication of its process, and no farther."

But does this rule reach the present case? Does it appear by the bill that there has been any abuse or misapplication of our process? From what has been already said we think these questions must be answered in the negative. In our opinion, the bill, as it now stands, so far from showing that Barth's land ought not to have been first seized and sold, really indicates a state of facts bringing the case within the rule established in the case of Aiken v. Bruen above cited. And, if so, Barth's land would be primarily liable to satisfy these judgments, also the other lands only secondarily liable. If this conclusion be just, Barth has no right to complain that there has been any abuse or misapplication of the process of this court.

II. In support of the demurrer, it is urged that, even if the court has jurisdiction of the parties, there is no equity on the face of the bill on which a decree could be rightly rendered in favor of the complainant.

We have already anticipated and sustained this objection to some extent. The bill, however, is defective in many other respects. It materially violates the twentieth rule in equity established by the supreme court. It infringes a fundamental rule of pleading by omitting to give the full names of all the persons to whom it refers. Thus it describes certain plaintiffs as "Abraham Trounstine, et al.," "Henry G. Ely, et al.," "Day & Matlock." It refers to no exhibits. And, in fine, it shows the marks of haste and the want of care, to such an extent that any decree which we might render in favor of the complainant would, in our opinion, be erroneous.

Although, as the bill now stands, we might perhaps be justified in dismissing it, at this stage, for want of jurisdiction, as it yet may be improved by amendment stating to whom the release in question was executed, indicating whether the marshal executed a conveyance of the Barth land, giving the full Christian and surnames of all the persons referred to in it, putting it in the shape required by the twentieth equity rule of the supreme court, and otherwise reforming it, we will, for the present, merely sustain the demurrer, and give leave to the complainant to amend. If he should not choose to amend the bill will be dismissed for want of jurisdiction.