CLENDENEN BOGGS, Appellant, v. ARCHIE DOUGLASS, Executor, et al., Appellees.

1. **Attachment:** LIEN: EQUITABLE INTEREST IN REAL ESTATE: SUPPLE-MENTAL PROCEEDINGS: ERRONEOUS DESCRIPTION: EFFECT. Where the levy of an attachment upon real estate, previously conveyed by the attachment debtor in fraud of creditors, was followed by supplemental proceedings for the enforcement of the attachment lien, in which the petition by mistake described the property as in township seventy-three, instead of township seventy-two; the correct description, and this error was carried into the decree in such proceeding,

which was intended to set aside said conveyance for fraud, and a sale was had thereunder to satisfy the judgment in the attachment proceeding, *held*, that the purchaser at said sale acquired no title to said property, nor any right to redeem from an execution sale thereof under a senior judgment, and that he was not entitled to have the error in said decree corrected in a court of equity, and the sale thereunder made effective as against a judgment creditor of said fraudulent grantor, who had redeemed from the sale under said senior judgment by payment of the necessary amount into court.

2. Appeal: QUESTIONS CONSIDERED BY THE SUPREME COURT. Upon an appeal from a part only of a decree in equity, the supreme court will not consider objections raised by the appellee to that part of the decree from which no appeal has been taken.

3. Judicial Sale: REDEMPTION: FULL PAYMENT REQUIRED. Payment to the clerk of the court, by the owner of premises sold under execution, of a sum less than the amount paid by the holder of a sheriff's certificate, with interest and costs, will not be effectual as a redemption.

4. ———: DEED: RIGHT TO POSSESSION: PRIORITY OF LIENS. Where a judgment has been enforced, by supplemental proceedings, against the equitable interest of the judgment debtor in real estate, and a deed acquired, the grantee thereunder will be entitled to the possession of said property as against the owner of a senior judgment, under which supplemental proceedings were commenced before those by said grantee, but never prosecuted to a final decree. And while the title under said sheriff's deed will be subject to the lien of the latter judgment, it is absolute as against a judgment senior to that under which said deed was acquired, but under which supplemental proceedings were commenced subsequent to those by said grantee, or, if prior in point of time, were dismissed without a hearing, thus divesting such judgment of the lien thereby acquired.

5. Practice in Supreme Court: AMENDED ABSTRACT: TIME FOR FILING: UNNECESSARY RECORD: COSTS. An amended abstract, filed by an appellee, will not be stricken from the files because not filed within the time required by the rules of the supreme court, when no prejudice has resulted. But where such abstract sets out matter fully presented in the abstract of the appellant, and gives some of the evidence in the form of question and answer, the court will make such an apportionment of the costs thereof as may be just in the premises.

*Appeal from Monroe District Court.*—HON. H. C. TRAVERSE, Judge.

MONDAY, OCTOBER 9, 1893.

ACTION in equity to recover possession of certain real estate, to correct errors in its description in a certain action instituted to subject it to the payment of a judgment, and to quiet the title to such real estate in the plaintiff. There was a hearing on the merits, and a decree which denied to the plaintiff a part of the relief demanded. From so much of the decree as is adverse to his interests, he appeals.—*Affirmed in part, and in part reversed.*

*Wm. A. Nichol*, for appellant.

*T. B. Perry*, for appellees.

ROBINSON, C. J.—On the seventeenth day of February, 1883, for the stated consideration of thirty-nine thousand, one hundred and twenty-five dollars, Aaron and William Hicks executed to Archie Douglass a warranty deed, which purported to convey to him about eight hundred and thirty-five acres of land in Monroe county, including that in controversy in this action, which is described as follows: "The east half of the northeast quarter and southwest quarter of the northeast quarter of section thirty-two, and the west half of the northwest quarter of section thirty-three, all in township seventy-three north, of range sixteen west." On the same day Douglass executed to his grantors a mortgage on the land thus conveyed for the alleged purpose of securing the payment of promissory notes to the amount of thirty-eight thousand, five hundred dollars. Four days later the plaintiff commenced two actions, aided by attachments. The record submitted to us is somewhat confused, but we conclude from it, and from admissions of counsel, that one of them was against A. and W. Hicks, and that one was against T. S. Thorp, as principal, and Aaron and William Hicks as sureties. The attach-

ments were levied upon the land in controversy. On the seventeenth day of the next April the plaintiff recovered judgment in the first action against A. and W. Hicks for the sum of one thousand, one hundred and eight dollars and six cents, an attorney's fee, and costs, and an order for the sale of the attached property, and on the next day he recovered judgment in the other action against Thorp, as principal, and Aaron Hicks and William Hicks, as sureties, for one thousand, one hundred and one dollars and sixty-six cents, an attorney's fee, and costs. On the seventh day of November of the same year he caused a special execution, issued for the satisfaction of the first judgment, to be levied on the land, although it does not appear that any sale thereunder was made. On the tenth day of the same month he filed in the proper court two petitions in equity, one describing the first judgment, and the other the second one, and alleging that on the seventeenth day of February, 1883, Aaron and William Hicks, for the purpose of hindering, defrauding, and delaying their creditors, and particularly the plaintiff, executed to Douglass a deed for real estate situate in the county of Monroe, and state of Iowa, which was described. The description given was substantially the same as that contained in the deed to Douglass, excepting that by mistake in the first case the land in section thirty-two was stated to be in township "seventy-two," instead of "seventy-three," and the township in which section thirty-three is situated was omitted. In the second case the land was correctly described. The plaintiff asked in each case that the deed to Douglass and his mortgage be decreed to be fraudulent and void. The relief demanded in each case was granted on the fourth day of March, 1887, the erroneous description contained in the petition in the first case being copied into the decree, and it was adjudged in each case that the real estate therein

described was subject to the judgment of the plaintiff upon which the case was founded. While those actions were pending, in November, 1884, Aaron Hicks died testate, making his widow, Elizabeth A. Hicks, the beneficiary of his estate. Archie Douglass was appointed executor.

On the sixteenth day of April, 1887, an undivided one half of the land in controversy was sold to the plaintiff under a general execution issued by virtue of his first judgment, as the property of William Hicks, for the sum of one thousand, six hundred and fifty-seven dollars and fifty-seven cents. On the sixteenth day of the next month, an undivided one half of the land was sold as the property of William Hicks, under an execution issued for the satisfaction of a judgment in favor of Thomas Trimble, rendered on the twentieth day of February, 1883, and against William and Aaron Hicks. A. Dorothy, who held a judgment against the same defendants, redeemed from the Trimble sale, the plaintiff redeemed from Dorothy, and in June, 1888, the sheriff executed to the plaintiff a deed for William Hicks' interest in the land. On the eleventh day of June, 1887, an undivided one half of the land was sold to the plaintiff for the sum of one thousand, four hundred dollars. It was sold as the property of Aaron Hicks, under an execution issued by virtue of the second judgment in favor of the plaintiff. He claims that redemption from that sale was made by one Tinsley, the owner of a junior judgment lien, and that the plaintiff, as the owner of part of another judgment rendered in favor of one Shaw, redeemed from Tinsley. In June, 1888, the sheriff executed to the plaintiff a deed for Aaron Hicks' share of the land. The plaintiff claims to be the owner of the land, and asks that the mistakes of the petition and decree in the first of the two actions commenced in November, 1883, be corrected, that his title be quieted, and that he have judg-

ment for the possession of the land.    Archie Douglass, as executor and in his own right, Elizabeth A. Hicks and William Hicks are made parties defendant.

The defendants deny that the conveyance to Douglass was ever set aside as to the land in controversy, and insist that he is now the owner of it.    They contend that for that reason the sale of William Hicks' share, made to satisfy the judgment of April 17, 1883, conveyed no interest.    They contend that Douglass redeemed from the plaintiff after he redeemed from Dorothy, and that the sheriff was, for that reason as well as others, without authority to execute a sheriff's deed for William Hicks' share.    The defendants claim in regard to the alleged redemption by and from Tinsley, that it was fraudulent and unauthorized and without effect; that Douglass redeemed of the plaintiff Aaron Hicks' share of the southwest quarter of the northeast quarter and the southeast quarter of the northeast quarter of section 32 by a timely payment into court of the amount required for that purpose.    They further claim that Douglass is the owner of three judgments, which are liens on the land paramount to that claimed by the plaintiff, one of which was rendered in favor of A. J. Casaday, one in favor of J. R. Wallace, and one in favor of Alexander Ramsey.

The district court decreed that Douglass properly redeemed William Hicks' undivided one half of the south half of the northeast quarter, and the northeast quarter of the northeast quarter of section 32, in township 73, of range 16, from the Trimble sale, and that the plaintiff had no interest therein, but was entitled to the redemption money.    The court also decreed that Douglass duly redeemed Aaron Hicks' half of the south half of the northeast quarter of section 32 from the plaintiff's sale of June 11, 1887, excepting from the right acquired by the plaintiff by virtue of a redemption under a part of the Shaw judgment, which the court

decreed that he had a right to make, subject, however, to the Casaday, Wallace and Ramsey judgments, which the plaintiff was required to pay within one year. It was further decreed that the plaintiff has perfect title to, and the right to possess, the west half of the northwest quarter of section 33, and the title to and the right to possess, as a joint tenant, Aaron Hicks' half of the northeast quarter of the northeast quarter of section 32. The appeal requires us to determine the right of the plaintiff as to William Hicks' share of the south half of the northeast quarter, and the northeast quarter of the northeast quarter of section 32, and as to Aaron Hicks' share of the south half of the northeast quarter of the same section.

I. The plaintiff contends that by virtue of his attachment levied in the first suit on the twenty-first day of February, 1883, the judgment rendered therein, the equitable action to set aside the conveyance to Douglass, and the decree therein, and the sale of the land, the redemption from the Trimble sale, and the execution of the sheriff's deed, he became vested with the share of the land originally owned by William Hicks. This is denied by the appellees, who insist that, as the land had been conveyed to Douglass before the attachment, and as it was not described in the action in equity brought to set aside that conveyance, he was not required to redeem from the sale to the plaintiff in redeeming from the Trimble sale. It appears that, after the plaintiff redeemed from that sale, Douglass paid to the clerk, for the use of the plaintiff, the amount required to redeem from it, being the full amount of principal paid by the plaintiff to redeem from Dorothy, with interest and costs, but failed to pay anything on account of the judgment in favor of the plaintiff and the sale thereunder. The district court found, as we

*1. ATTACHMENT: lien: equitable interest in real estate: supplemental proceedings: erroneous description: effect.*

have stated, that his redemption was effectual to divest the plaintiff of his interest in William Hicks' share of the land in question on this appeal, and that the money paid by Douglass belonged to the plaintiff.

. It is the well settled rule in this state, that the levy of an attachment upon real estate which the attachment debtor has conveyed to another to defraud his creditors, unless followed by supplemental proceedings, creates no lien upon the property so attached. It is true that the interest of a debtor in real property subject to execution, whether legal or equitable, may be seized and sold at the suit of a creditor. But that rule does not apply to a case where the debtor has divested himself of all right to and interest in the property by an absolute conveyance to another. When that is done, he ceases to have any interest in the property which a court would enforce at his suit. Such a conveyance would be good, excepting as against creditors, and the levy of an attachment upon the property conveyed, without more, would not operate to create a lien. *Clark v. Raymond*, 84 Iowa, 251; *Boyle v. Maroney*, 73 Iowa, 70, 71; *Howland v. Knox*, 59 Iowa, 46. See, also, *Lippencott v. Wilson*, 40 Iowa, 425, 428.

In *Bridgman v. McKissick*, 15 Iowa, 260, 261, it appeared that McKissick had purchased certain real estate, the title to which he took in the name of his wife for the purpose of defrauding his creditors. A creditor named Bone commenced an action, aided by attachment, against McKissick, obtained a judgment therein in May, 1861, and in August the land was sold to him at sheriff's sale made by virtue of his judgment. In July, 1861, Bridgman & Company obtained a judgment against McKissick, and commenced an action in the nature of a creditor's bill to subject the land, which had been conveyed to the debtor's wife, to the payment of their judgment. Bone was made a party defendant. This court held that, although his attachment and

judgment were prior to the judgment of the plaintiffs, yet that the latter had the prior right, because they had first commenced proceedings in equity to subject the lands to the payment of their judgment. It was said of Bone's levy and purchase that it conveyed nothing, for the reason that the judgment debtor had no interest in the land which was vendible on execution. He had no interest which he could have enforced against his wife, and the sale under execution would be ineffectual to transfer any title unless followed by an action in equity in which the sale might be confirmed. That holding necessarily rested upon the conclusion that no lien was created by the attachment and judgment in favor of Bone.

It is said that in cases of this kind the fraudulent grantee is a trustee for the creditors, and *Taylor v. Branscombe*, 74 Iowa, 534, 536, is cited as an authority to that effect. It is true that it was therein said that "in the case of a conveyance of real estate to defraud a creditor the grantee is regarded by the law as holding the title in trust for the grantor, to be applied in payment for his debts. As to the creditor, the law regards the debtor as a *cestui que trust*, having an interest in the trust property which may be attached in any civil action." But that language must be construed in harmony with the rules we have stated. It was used in an equitable action, aided by attachment, in which a judgment against the debtor and the setting aside of a fraudulent conveyance were demanded, and applies only to cases when proper equitable proceedings are had to subject the property fraudulently conveyed to the payment of claims against the debtor.

It is said, however, that the property in controversy was subjected to the plaintiff's claim by the decree in the equitable action; that the description of the land contained in the papers in that action was sufficient after rejecting the erroneous part. The peti-

tion in that case described the land, as has been shown, but, in addition, stated that it had been attached in the action of February 21, 1883, and ordered sold by the judgment therein rendered, and asked that the lien of the attachment and judgment be established and enforced "against said real estate." The land was correctly described in the sheriff's return on the writ of attachment and in the incumbrance book, and had the references of the petition been carried into the decree, there would have been more force in the claim of the plaintiff, but the decree described specifically the land to which it referred, and the description would not have been sufficient to identify the land had the erroneous part been rejected. The decree was the final determination of the relief to which the plaintiff was entitled, and, as it did not refer to the land now in controversy, the title to it was not in any manner affected by it, but stood as though the equitable action had never been instituted.

It is said that the erroneous description was inserted in the papers and decree by mistake; that all parties in interest knew what land was intended; that those parties are now in court; and that the mistake may now be corrected. The evidence shows that the error was the result of a mistake, and that the parties knew what land was intended to be reached by the equitable action; but the fact remains that when William Hicks' share of the land in controversy was sold the plaintiff had no lien upon it, and no right to sell it. Douglass was entitled to protect his interest in the land by discharging the liens thereon, and had the right to redeem from the Trimble sale. *Fordyce v. Hicks*, 76 Iowa, 41, 43. He was under no obligation to redeem from the plaintiff, for the reasons stated. Whether he would have made such redemption had it been necessary to protect his title, we can not now determine, and would not be justified in depriving him of the right of electing what course to pursue, which

he would have had in case the judgment of the plaintiff
had been a lien upon the land when he was required
to determine the course he would pursue to protect
his title. It is the policy of the law, when real estate
has been erroneously sold to satisfy a judgment which
was not a lien upon it at the time of the levy, to permit
the sale to be set aside. Code, section 3090. In *Sny-
der v. Ives*, 42 Iowa, 157, a sale of real estate, made
under a decree which was erroneously entered, was set
aside, the error was corrected, and a resale ordered.
The plaintiff was not entitled to redeem from the Trim-
ble sale, and the fact that Dorothy accepted the money
paid for that purpose does not alter the case. Douglass
paid all he was required to pay in order to discharge
the lien which the plaintiff had acquired from Dorothy.
We can not give to the parties the rights they pos-
sessed when the sales and redemptions were made, and
would not be justified in decreeing to be valid the sale
which of itself conferred no right when made. *Ward
v. Brewer*, 19 Ill. 291; *Rogers v. Abbott*, 37 Ind. 138;
*Keepfer v. Force*, 86 Ind. 87; *Runnels v. Kaylor*, 95
Ind. 504; Freeman on Void Judicial Sales, section 55.
We conclude that the redemption made by Douglass of
William Hicks' share of the land in controversy was
authorized, and effectual to extinguish the Trimble
lien.

II.  The validity of the sale of Aaron Hicks' share
of the land is denied by the appellees on several grounds,
**2. APPEAL: ques-
tions consid-
ered by the
supreme court.** which are not so discussed in argument as
to require consideration. The appellees
insist that the redemption made by the
plaintiff under the Shaw judgment was without author-
ity, collusive and fraudulent. The district court
adjudged that the redemption so made was authorized,
but that it was subject to the Casaday, Wallace and
Ramsey judgments; that those judgments were liens on
Aaron Hicks' share of the south half of the northeast

quarter of section 32, superior to the lien of the Shaw judgment, and that the plaintiff must pay those judgments in full within one year, or he could claim no benefit from his redemption under the Shaw judgment. The defendants do not appeal, and the plaintiff has expressly excepted from his appeal the adjudication of the court that he had redeemed Aaron Hick's share of the land under the Shaw judgment; therefore that part of the decree must stand. *Hanks v. Brown*, 79 Iowa, 564; *Miller v. Schenck*, 78 Iowa, 376; *Charlton v. Sloan*, 76 Iowa, 288; *Smith v. Wolfe*, 55 Iowa, 555, 557; *Hintrager v. Hennessy*, 46 Iowa, 600, 605.

III. It is said that Douglass redeemed from the sale to the plaintiff made June 11, 1887, by paying to 3. JUDICIAL sale: the clerk on the eleventh day of June, redemption: full payment 1888, the amount for which Aaron Hicks' required. share in the south half of the northeast quarter of section 32 was sold, with interest and costs. In attempting to so redeem, Douglass acted not as a lienholder, but as the owner of the land. A lienholder is required to redeem within nine months from the date of the sale, unless the time is extended under the the provisions of sections 3114–3116 of Code, and that was not done in favor of Douglass. But to redeem as owner he was required to pay the amount which the plaintiff had paid for the certificate which he then held, with interest and costs. Code, section 3106. That amount, including the payment under the Shaw judgment, was much more than the sum actually paid. The attempted redemption was therefore not accomplished.

IV. The remaining question to determine is, what, if anything, is required of the plaintiff to protect the 4. ——: deed: interest he acquired by redeeming under right to possession: priority of liens. the Shaw judgment? Three judgments were rendered against Aaron and William Hicks by the district court of Monroe county, one of which was in favor of A. J. Casaday, one in favor of J,

R. Wallace, and one in favor of Alexander Ramsey.
All were rendered before the Shaw judgment, which
was obtained in April, 1884. The judgment creditor
in each case, after recovering judgment, commenced an
action in the nature of a creditors' bill, to set aside the
conveyance made by Aaron and William Hicks to
Douglass in February, 1883, and to subject the land
conveyed to the payment of the judgment. The three
judgments, including the rights created by the credit-
ors' bills, were transferred to Douglass before this action
was commenced, and he now owns the interests thus
acquired. The sums due on the three judgments aggre-
gate about five thousand, seven hundred dollars. The
theory upon which the district court required the plain-
tiff to pay those judgments in order to preserve the rights
he had acquired under the Shaw judgment appears
to be that the judgment in each case and the cred-
itors' bills together created a valid and subsisting lien
superior to the rights of the plaintiff. Under the rule
announced in another branch of this case the judg-
ments alone created no lien on the land alleged to have
been fraudulently conveyed. The creditors' bills gave
notice to all persons interested of the rights of the judg-
ment creditors, and were effectual to make subsequent
transfers of the property subject to their rights. The
filing of each bill created a lien to the extent of the
creditors' claim, but such lien was liable to be divested
by a dismissal of the bill without a hearing, or by an
adjudication that it was not well founded. In *Bridg-
man v. McKissick*, 15 Iowa, 260, it was said of such a
bill that it operates as a *lis pendens*, or, in other words,
a general notice of an equity to all the world. 2
Bouvier's Dictionary. Neither of the creditors' bills
in the three cases specified has been prosecuted to a final
decree. On the contrary, it is shown that the one to
enforce the Wallace judgment, after having been carried
on the docket for about eight years, has been dropped.

In *Fordyce v. Hicks*, 76 Iowa, 41, it was said in regard to the three judgments under consideration, and the equitable actions to enforce them, that the rights they conferred did not merge in the title Douglass held to the land, but that he was entitled to enforce such rights by means of a counterclaim or cross petition in an action brought to set aside his deed. Douglass now asks that his rights under the same judgments and creditors' bills be adjudged to be superior to the rights of the plaintiff to Aaron Hicks' share of land, acquired through the Shaw judgment, and that he be required to pay those judgments in full before he is permitted to insist upon the right he has so acquired; and the *Fordyce case* is relied upon as authority for the relief asked. The controlling facts in the two cases are not in all respects the same. The decision in the *Fordyce case* was on demurrer to the cross petition, and was, in effect, that Douglass had acquired all the rights of the judgment creditors, and was entitled to have them protected and enforced in that action. It was not held that the lien of Douglass should be paid before the real estate was sold to satisfy the judgment of the plaintiff, although that relief was asked in the cross petition. In this case the deed to Douglass was held, in the equitable action brought to enforce the judgment under which Aaron Hicks' interest was sold, to be fraudulent, and it is shown that Douglass is entitled to all the rights created by the judgments and creditors' bills in the *Casaday, Wallace and Ramsey cases*, but we fail to discover any reason for holding that those judgments, or any of them, must be paid by the plaintiff before he can claim any benefit from the redemption under the Shaw judgment. By that redemption he became entitled to a sheriff's deed for the property of Aaron Hicks now in controversy at the expiration of one year from the date of the sale of June, 1837, and when that deed was issued to him he

became entitled to the possession of the land, and the rents and profits thereof, as against Douglass. The liens held by the latter did not give him the right of possession. In the *Fordyce case* his right to relief was based upon the fact that the liens were not merged in the title conveyed to him by the deed, but that he had the same right to enforce them that his assignors had possessed. If, as in the *Fordyce case*, and the case of *Smith v. Grimes*, 43 Iowa, 356, 357, a sale of the premises was required to give to the plaintiff the relief to which he is entitled, provision might be made for satisfying the senior liens, but no sale is required for that purpose. The plaintiff already has the legal title and the right of possession, and all he desires is to have that right recognized and enforced, and to that he is entitled. The relief granted to him is subject to the right of Douglass to enforce the lien created by the Casaday judgment, and the petition in equity filed to enforce it. The judgment was rendered in April, 1883, and the petition in equity was filed in May of the same year. The lien thus created is paramount to that under which the sale of June, 1887, was made, for the reason that the petition to enforce the judgment under which that sale was made was not filed until November 10, 1883. But the action to enforce the Wallace judgment was not filed until November 19, 1883, and the lien thus created is junior to that under which the sale was made. The redemption under the Shaw judgment was made under sections 3114–3116 of the Code, and, although that judgment is junior to the Ramsey judgment, yet, as the redemption resulted in giving title by virtue of a sheriff's deed issued on a sale made under a judgment senior to that in favor of Ramsey, we are of the opinion that under the facts of this case it should be held that the title thus acquired is not subject to the lien of the Ramsey judgment.

V. A motion has been filed to strike from the record the additional abstract filed by the appellees, and to tax the costs thereof to them, on the ground that it was not served within the time required by section 19 of the rules of this court, and that it was not prepared as required by such rules. It is not our practice to strike an additional abstract from the record for a failure to serve and file it within the time required by the rule, where, as in this case, no prejudice is shown to have resulted from the delay. But the additional abstract sets out matter which was quite fully set out in the abstract of the appellant, and gives some of the evidence in the form of questions and answer. No reason for setting out the evidence in that form appears. We think substantial justice will be done by overruling the motion to strike, and by taxing the costs of printing one half of the additional abstract to the appellees. Of the other costs in the case, including that of one half of the additional abstract, one half will be taxed to each party.

*5. PRACTICE in supreme court: amended abstract: time for filing: unnecessary record: costs.*

So much of the decree of the district court as adjudged that Douglass had rightly redeemed William Hicks' share of the south half of the northeast quarter, and the northeast quarter of the northeast quarter of section 32, and had a perfect title and right of possession thereto, is affirmed. In other respects, so much of the judgment as is involved in this appeal is REVERSED.