MRS. L. L. WARE, Plaintiff, Appellant, and ABLE AMES & Co., Interveners, Appellants, v. DELAHAYE & PURDY, *et al.*, Defendants, Appellees.

**Equitable Lien.** Code 2969, 3150 and 3151 provide that *after* judgment equitable proceedings may be brought to subject the property of the defendant to the judgment and that, in such case, a lien shall be created on any property of defendant held by any third person, described in the petition, the lien to date from the time at which such third person is served with notice and a copy of the petition. *Held:*

    a. The bringing of an equitable action, *before* judgment at law is obtained, in which action said third person is served with original notice and in which a supplemental petition is filed *after* judgment is obtained will not create such lien, though the third party holding property of the debtor appear to such original notice. *Taylor v. Branscombe,* 74 Iowa, 534, *distinguished.*

    b. An attachment upon property conveyed to another will not of itself create a lien. *Boggs v. Douglas,* 89 Iowa, 150, *followed.*

    c. This statutory means of obtaining a lien supersedes the equitable levy at common law which was obtained by serving process and filing a bill in equity.

**Priority: Judgment.** While under Code, 2882, judgments are liens on after acquired property, all judgments which are in existence when the property is acquired attach to it as of that instant, without reference to the order of their rendition.

**Practice on Appeal.** Where all parties have proceeded on the theory that matter in the cross bill is in issue, it will be treated as in issue, on appeal.

*Appeal from Des Moines District Court.*—HON. J. M. CASEY, Judge.

MONDAY, OCTOBER 14, 1895.

On February 2, 1891, the plaintiff, Mrs. L. L. Ware, a judgment creditor of the firm of Delahaye & Purdy, alleged to be insolvent, brought this action to charge

the east half of lots 742 and 743, in the city of Burlington, and sixteen and two-thirds shares of the capital stock in the Merchant's National Bank of Burlington, as per certificate No. 307, as the property of Hiram Purdy, a member of said firm, with said indebtedness. Ellen Purdy, Ellen Purdy as trustee, and Lucy Phyfe were made defendants, as claiming some interest in said real estate under conveyance from Hiram Purdy, alleged to be fraudulent. Horace I. Purdy was made a defendant, as claiming some interest in said bank stock under a transfer from Hiram Purdy. Plaintiff alleges that the indebtedness upon which judgment was rendered in her favor accrued long before said conveyances and transfer from Hiram Purdy, and that the note set out was a renewal. Morris Willner and Abel Ames & Co., creditors of said firm, were made defendants, as claiming some interest in said property. Defendant Willner answered, substantially concurring in plaintiff's allegations of fact and of fraud in the conveyances and transfer of said property by Hiram Purdy. He alleges as a cross demand that on August 16, 1889, he instituted a suit against Delahaye & Purdy and Hiram Purdy, in which an attachment was issued and levied on said property; that immediately thereafter he proceeded by a bill in equity against the parties claiming said property through Hiram Purdy, asking to subject the same to the payment of the debt due him; that on the nineteenth day of November, 1889, he procured judgment in the law action, and thereafter filed a supplemental petition, setting up judgment, and asking that said conveyances and transfer be set aside, that he have lien upon said property, and that it be decreed prior and paramount to plaintiff's lien and to all claims of the defendants. November 19, 1891, Abel Ames & Co. answered, denying that Willner was a creditor of said firm, and all allegations of the petition, for want of knowledge sufficient to form a belief. They allege

as a cross demand that on the sixteenth day of August, 1889, they instituted a suit against Delahaye & Purdy, A. Delahaye, and Hiram Purdy, aided by attachment, which was levied upon the property of said defendants, including that in question, and that judgment was rendered in said action against the defendants therein. They make substantially the same allegations of fraud in said conveyances and transfers as those made by the plaintiff, and ask that the same be set aside, and said property be subjected to the payment of the judgment in their favor.    Horace I. Purdy answered by his guardian *ad litem* that he was a minor, and denied generally, except as to his ownership of the property. The other defendants answered at length the petition and cross demands, in effect admitting that proceedings were had by said creditors as alleged, that conveyances were made of said real estate and a transfer of said bank stock as alleged, but denied every allegation of fraud, and asked to be dismissed with costs.    Decree was entered declaring that the transfer of said sixteen and two-thirds shares of bank stock was without consideration, and in fraud of the rights of the creditors of Hiram Purdy, and setting the same aside, and that Morris Willner has the first lien thereon.    The conveyances of said real estate by Hiram Purdy were held to be valid, and it was found that he was the owner, by inheritance from his son James, deceased, of one undivided one-half of the middle one-third of said real estate, upon which the judgments against him were liens in the order in which they were rendered.    Said undivided one-half in said real estate and said bank stock were decreed to be sold, and the proceeds applied first to the payment of Willner's judgment, and then to the other judgments in the order in which they were rendered.    To as much of said decree as subjected the real estate inherited from James B. Purdy to execution and sale, Hiram Purdy, Hiram Purdy, trustee, and

Ellen Purdy, trustee, excepted. To so much of the decree as subjected said shares of bank stock to execution and sale, Hiram Purdy, trustee, and Horace I. Purdy excepted. To so much as dismisses plaintiff's petition and the cross petitions as to all the other property in controversy, plaintiff and defendants Willner and Abel Ames & Co. excepted, and plaintiff and Abel Ames & Co. excepted to all of said decree except so much thereof as declares the bank stock and the real estate inherited to be the property of Hiram Purdy. Plaintiff and Abel Ames & Co. served notice of appeal February 28, 1893, and Hiram Purdy, trustee, Horace I. Purdy, minor, by his guardian *ad litem*, served notice of appeal August 17, 1893.

*Power, Huston & Power* for appellants.

*P. Henry Smyth* for appellee Willner.

*S. L. Glasgow* for other defendants.

Kinne, J.—I. This cause is now presented to us on a rehearing; which was granted only as to the matter treated of in the fourth division of the original opinion, which will be found in 60 N. W. Rep. 526. In that division it was held that Morris Willner was entitled to a first lien on the sixteen and two-thirds shares of bank stock. As to that we now reach a different conclusion. In all other respects the original opinion, which is as follows, is adhered to:

"On and prior to May 16, 1882, Hiram Purdy was the owner of the east half of lots 742 and 743 in the city of Burlington, upon which he had in 1878-79 erected three dwelling houses, which property was, in 1882, worth about $15,000. On said sixteenth day of May, 1882, he and his wife, Ellen, in consideration of love and affection, joined in a deed conveying said property to her, in trust for their three children; the west one-third for Sarah Ann, the middle one-third for James

B., and the east one-third for Horace I. Purdy, during his life, and after death to his wife, during her life, for her support and the support and education of the children. On December 19, 1887, 'for value received,' Hiram Purdy conveyed to his wife his right to the control and income of said property. On October 1, 1888, Hiram Purdy, in consideration of love and affection, conveyed their homestead, consisting of some thirty acres, near Burlington, to his wife. These three deeds were not filed for record until August 5, 1889. The daughter, Sarah Ann, died June 24, 1889, intestate, leaving her husband, Mr. Plume, but no children surviving her. On August 1, 1889, Hiram Purdy conveyed to his wife, in consideration of love and affection, the interest he inherited from Sarah Ann in the west one-third of said property, which deed was filed for record August 12, 1889. October 30, 1890, Mr. Plume conveyed his interest in the west one-third to Lucy Phyfe, a daughter of Hiram Purdy by a former marriage. Mrs. Phyfe died in November, 1891, leaving her husband, William Phyfe, and son, Harry Deming, surviving her. On September 18, 1890, James B. Purdy, for whom said middle one-third was conveyed, died a minor, unmarried, and without issue, by reason of which his interest in said property passed to his parents, Hiram and Ellen Purdy. No conveyance was ever made by Hiram Purdy of this interest, and it is not disputed but that the judgments against him are a lien thereon, but the contention is as to the order of their priority. It is not claimed that the homestead should be subjected to the payment of these debts, but the making of that conveyance is relied upon as showing fraud in the other conveyances from Hiram Purdy to his wife. On and for several years prior to February 8, 1888, Hiram Purdy was the owner of sixteen and two-thirds shares of the capital stock of the Merchants' National Bank of Burlington, of the face value of one hundred dollars

each. On that day he transferred said stock to himself as trustee for the benefit of his minor son, Horace I. Purdy, causing said transfer to be duly entered on the books of the bank, and a new certificate to be issued. Hiram Purdy and L. Delahaye were engaged in business as wholesale liquor dealers at Burlington, as equal partners, under the firm name of Delehaye & Purdy, from 1861 to August 10, 1889, when the firm failed, and their property was taken by their creditors. During the last ten years the business was managed by Delahaye, Mr. Purdy giving it but little attention. These conveyances to Mrs. Purdy, and the transfer of the bank stock, were unquestionably without other consideration than love and affection, and conveyed all the property that Mr. Purdy had, except his interest in the partnership.

II. The creditors Mrs. L. L. Ware, Morris Willner, and Abel Ames & Co. join in claiming that these conveyances and this transfer of bank stock are fraudulent and void as to them. There is no question but that Mr. Purdy is personally liable for the debts of his firm, and the law is well settled that if he made these conveyances, or either of them, with intent to defraud his creditors, those so made are void as to the creditors. At the time Mr. Purdy executed the deed of May 16, 1882, he had no liabilities other than as a member of the firm of Delahaye & Purdy. The firm, according to its books, had on January 1, 1883, $17,697.24 of assets over liabilities. These books are open to many of the criticisms made upon them, and it is no doubt true that uncollectible notes and accounts were carried as assets, but not sufficient, we think, to show the firm insolvent in 1882. We have no doubt that it was then entirely solvent, and able to pay all its liabilities. Such being the facts, Mr. Purdy had no reason then to anticipate trouble from his creditors, and no intention of defrauding them by making that conveyance. It seems to us

that quite a different motive prompted the making of the deeds in question. Under the restrictions and penalties of the law, the business of Delahaye & Purdy was a hazardous one; and by reason of the vote to be taken in June, 1882, on the prohibitory amendment, and the uncertainty as to what legislation would follow, that business was rendered more uncertain and hazardous. Mr. Purdy was advanced in years, was taking no active part in the management of the firm's business, and, desiring to save his individual property to his wife and children as against any consequences that might arise under the law from the firm's business, he executed the conveyances to Mrs. Purdy. Such, we think, was his motive; but, whether correct or not, we are convinced there was no intention to defraud creditors in the making of either of these conveyances. A delivery of the deeds was consistent with their execution, and we see no reason to doubt the positive statements of both Mr. and Mrs. Purdy that they were delivered at or soon after their execution. That these deeds were withheld from record, as they were, certainly calls for a better explanation than that given by Mrs. Purdy. She says, 'I did not think it was necessary to record them sooner.' We think the true reason is found in the purpose for which the deeds were made, namely, to protect the property from fines and forfeitures that might arise under the law out of the business of the partnership, and not with the intention of defrauding creditors.

III. These conveyances of real estate and this transfer of bank stock were mere gifts, and, under the familiar rule of the law, are void as to existing creditors, unless Mr. Purdy retained sufficient property to pay all his debts. At the time he made the deed of May 16, 1882, he had no liabilities except as a member of the firm, and he retained no property but the rents reserved in that deed, his homestead, which was not subject to

his debts, and his interest in the partnership. It does not appear that he then owned the bank stock, but, if so, it was retained. Whether the gift of May 16, 1882, was a fraud upon existing creditors depends largely upon the financial condition of the firm. We have the condition of the firm before us as shown by its books for the years 1883 to 1888, inclusive. This showing is open to many of the criticisms made upon it, especially as to the latter years. We are satisfied, however, that in May, 1882, and later, the firm was perfectly solvent, and had ample assets to meet all its liabilities. The books show a surplus on January 1, 1883, of $17,697.24, and we see nothing to deduct that would approach insolvency. The gift of May 16, 1882, cannot be held to be a fraud on existing creditors, as ample property was retained to pay existing debts. The same may be said as to the gift of December 19, 1887, of the rents reserved in the deed of May 16, 1882. True, the surplus January 1, 1887, was but $8,248.86; but, making all proper deduction for all uncollectible notes and accounts, we think the firm was then solvent. We have no statement of the condition of the firm later than January 1, 1888. It is evident that the surplus of $8,851.83 then shown is not reliable. The uniformity of the amount of notes and accounts given each year in the statement of an open and running business is certainly unusual. In each of the six years the accounts are given at $15,000, the amount of notes varying but a few hundred dollars. It is in evidence that notes and accounts were carried as assets, regardless of whether they were collectible or not, and that it was this valueless drift from former years that constituted the surplus as stated January 1, 1888. We need not discuss the evidence at length. It is sufficient to say that we find from it that, because of the effect of legislation upon the business of Delahaye & Purdy and other causes, they were insolvent as early as January 1, 1888,

and continued to be insolvent. It follows from this conclusion that the gift of the bank stock, made February 8, 1888, and the conveyance made August 1, 1889, of the share in the west one-third, inherited from Sarah Ann, are void as to existing creditors, Mr. Purdy not having reserved property sufficient to pay his debts. It is not questioned that the interest inherited by Hiram Purdy from his son, James B., in the middle one-third of said lots, is subject to the payment of Hiram Purdy's debts.

IV. The court below decreed appellee Morris Willner to have a first lien on said shares of bank stock, and of this the appellants Mrs. L. L. Ware and Abel Ames & Co. complain. Willner's claim to priority rests upon the following proceedings: On August 16, 1889, he commenced an action at law against Delahaye & Purdy and Hiram Purdy on a promissory note dated January 3, 1887. In that action an attachment was issued, and on the same day levied on the east half of said lots 742 and 743, and upon said homestead. The return also shows that 'August 17, 1889, at 2:45 P. M., I attached, as the property of Hiram Purdy, sixteen and two-thirds shares of the capital stock of the Merchants' National Bank of Burlington, Iowa, now standing in the name of Hiram Purdy, trustee of Horace I. Purdy, upon the books of said bank, being all the stock of said bank standing upon the books thereof and held in the name of Hiram Purdy, or Hiram Purdy, trustee.' Notice of this levy was served on the cashier of said bank August 17, and upon Hiram Purdy August 19, 1889. On August 16, 1889, Willner filed his bill in equity to set aside the conveyances and transfer of the real estate and bank stock attached, and to subject the same to the lien of his attachment. An answer was filed by defendants November 18, 1889, and on November 19, 1889, judgment was entered in favor of Willner in the law action, and it was ordered that the property

attached be not sold until the remaining issues, including those on the petition of intervention of Ellen Purdy, Ellen Purdy, trustee, James B. Purdy, Hiram Purdy, trustee, Horace I. Purdy, and David N. Plume, who intervened in the law action, were adjudicated. After obtaining his judgment, Mr. Willner, on January 18, 1890, filed a supplemental petition in the action in equity, setting up his judgment, alleging insolvency of the judgment defendants, and that the conveyances and the transfer of the shares of bank stock were fraudulent, and asking that the same be set aside. Answers were filed by defendants November 13, 1891, and thus the record in that case remains. The proceedings under which appellants Ware and Abel Ames & Co. claimed liens upon said shares of bank stock were all subsequent to those above mentioned, and the question is whether, by those prior proceedings, Morris Willner acquired a lien on the bank stock, such as to entitle him to preference over said appellants."

Counsel for appellee Willner, while claiming that his attachment of the bank stock was authorized by statute, admits that no lien was created thereon which was enforceable at law. It is contended, however, that Code, sections 2962, 2949, not only authorize the attachment of personal property of a debtor which has been fraudulently conveyed, and the legal title to which is in another, but such debtor may be treated as a *cestui que* trust. This contention is largely based upon certain language used in the opinion in *Taylor v. Branscombe*, 74 Iowa, 534 (38 N.W. Rep. 400). That action was one relating to real estate, and the rule laid down is not applicable to the case at bar. Furthermore, it is modified and restricted by what is said in *Boggs v. Douglass*, 89 Iowa, 150 (56 N.W. Rep. 412). In that case it is also held that the levy of an attachment upon property conveyed to another, without more, will

not operate to create a lien.    It cannot be seriously con-
tended that the attempt to attach the bank stock which
stood in the name of Hiram Purdy as trustee as said
Purdy's individual property constituted a lien enforce-
able at law.    Code, section 2969.    Our statute provides
that "at any time after the rendition of a judgment, an
action by equitable proceedings may be brought to subject
any property, money rights, credits or interests
therein belonging to the defendant, to the satisfaction
of such judgment."    Code, section 3150.    Section 3151
provides how the defendants shall answer, and that
such order shall be made or judgment entered as the
nature of the case may require.    Section 3152
provides that "in the case contemplated in the
two preceding sections, a lien shall be created
on the property of the judgment debtor, or his interest
therein, in the hands of any defendant or under his con-
trol, which is sufficiently described in the petition, from
the time of the service of notice and copy of the peti-
tion on the defendant holding or controlling such prop-
erty or any interest therein."    These sections provide a
way for reaching any interest which one has in property,
the legal title to which is in another.    We first proceed
to determine whether Willner took the necessary steps
to bring himself within the provisions of the statutes
quoted.    Clearly he did not acquire any lien by his bill
in equity first filed, as he then had no judgment.    The
statute provides that the contemplated equitable pro-
ceedings may be brought "at any time after the rendi-
tion of a judgment," and we have held that such pro-
ceedings under these sections of the statute cannot be
brought in advance of obtaining a judgment.    *Faivre v.
Gillan,* 84 Iowa, 573 (51 N. W. Rep. 47); *Clark v. Ray-
mond,* 84 Iowa, 251 (50 N. W. Rep. 1068).    Now, Willner,
after judgment was obtained, filed a supplemental peti-
tion, which in form substantially complied with the
statute.    But the statute provides that a lien shall be

created upon the property, not by filing a bill in equity alone, but it expressly provides for the creation of the lien "from the time of the service of notice and copy of the petition," etc. Hence we have a case where only a part of the steps were taken which were necessary in order to create the lien. No notice or copy of the petition was served, hence no lien could be created under these provisions of the statute. Here is a statute giving parties a lien upon the doing of certain specified acts. To obtain the benefits of such a statute it is incumbent on Willner to show that he has complied with its provisions. He has not done so. The legislature having fixed the conditions upon which a lien shall be created, we are not authorized to say that such a lien may be had by a partial compliance with its requirements. To do so would be, to that extent, abrogating the statute itself. It is a general rule that a statutory lien can exist only when it has been perfected in the manner prescribed by the statute. Jones, Liens, section 106.

V. It is claimed that the appellee in effect complied with the statute by serving the original notice in the suit, and filing the copy of the petition provided for by the rules of practice. These acts in no way complied with the statutory requirements that, in order to create the lien, Willner must have served a notice *and a copy of the petition* on the defendant holding or controlling the property sought to be reached. As we have already said, no notice, such as the statute requires, was served, and no copy of the petition was ever *served* as required. The provisions of the statute are plain. They are easily complied with, and such a lien cannot be created by doing something other than what the law prescribes, even though the act or acts in fact done might be such as to convey

to the party notice. The law having provided just what shall be done, its demands cannot be met by doing something else. So, also, the fact that the party to be served with this notice and copy of the petition appears in the case, cannot be deemed or treated as a waiver of the express statutory requirements. In other words, this being a statutory lien, and existing only upon the performance of the conditions fixed in the statute itself, it is incumbent on those who would avail themselves of it to show a full compliance with every act upon which the existence of the lien is made to depend. In *Lounsbury v. Railroad Co.*, 49 Iowa, 256, referring to the written notice required by the statute in certain cases of mechanics' liens, it is said: "As this is a statutory lien, it matters not what notice or knowledge the owner may have, if the required notice is not given at least in substance. No such thing as constructive notice is known to or recognized by the statute." So in *McNaught v. Railroad Co.*, 30 Iowa, 336, it is said: "The legislature having made the defendant's liability to depend upon a particular fact, it is not competent for the courts to substitute another fact, 'although it were fully equivalent, in benefit of the fact prescribed by the legislature.'"

VI. It is urged that plaintiff did not file any answer to Willner's cross bill, and hence cannot now be heard. It is now too late to make this claim, after all the parties have proceeded upon the theory that the facts therein stated were properly in issue.

Nor, as we view it, was it material as to whether the cross bill was answered or not. By her petition and amendment thereto plaintiff claimed a lien upon the bank stock prior to Willner. Issue was taken upon this claim in Willner's answer. In other words, the same matter pleaded in Willner's cross bill must have been considered under the issues irrespective of his cross bill. *Brown v. Barngrover*, 82 Iowa, 209 (47 N.

W. Rep. 1082); *Medland v. Walker* (decided at this term) 64 N. W. 797.

VII. It is said that what Willner in fact did was sufficient to give him a lien in the nature of an equitable levy. It may be conceded that at common law the filing of a creditors' bill and the service of process gave the creditor a lien upon the property in the nature of an equitable levy. It is urged that this rule of the common law still exists in this state, and, if so, that Willner's lien upon the bank stock is prior to that of plaintiff and Abel Ames & Co. We do not think this common-law rule is in force in this state. Here we have a statute prescribing just what shall be done in order to create a lien on the effects of a judgment debtor. Under it no bill in equity, as a rule, can be filed until after judgment. These provisions and requirements are inconsistent with the idea that such a lien can be created independent of the statutory provisions. It was said by this court in *Reeves v. Sebern,* 16 Iowa, 237, where the question was as to whether, in the absence of a statutory provision controlling it, an execution should be held to be a lien from its teste, as at common law, or only from actual levy. "We do not feel bound to adopt the unreasonable and unjust rule of the ancient common law, so unjust, indeed, that it had to be remedied by statute. It does not accord with the policy of our laws, nor harmonize with decisions on kindred subjects. The whole current of judicial decisions in this state has ever, and, we think, most wisely, been against secret constructive liens, especially when these are set up against purchasers." Now, at common law the lien against the judgment debtor's property was only effected by filing the bill in equity and serving process. While the public records would disclose the fact that a bill had been filed, they might not show that process had been served on the defendant. Thus a lien would be acquired of which other interested

parties would have no notice whatever. We do not think such a rule should obtain in this state. The statute having pointed out the procedure by which a lien may be obtained in cases like this, we are justified in presuming that the legislature intended thereby to supersede the common-law method, inasmuch as the statutory procedure prohibits the filing of the bill until after judgment, and expressly provides the kind of notice to be given. Another fact proper to be considered in this connection is that the cases relied upon in support of the contention that the common-law rule as to equitable levy in such cases is in force were decided in states where the doctrine of *lis pendens* applies to personal property. Such we understand to be the case in New York and Illinois. So, also, in those states the common-law rule is in force, and property is bound from the time the writ is delivered to the sheriff. *Hendricks v. Robinson*, 2 Johns. Ch. 283; *Brinkerhoff v. Brown*, 4 Johns. Ch. 671; *People v. Bradley*, 17 Ill. 485; *Leach v. Pine*, 41 Ill. 65. The case of *Miller v. Sherry*, 2 Wall. 249, arose in Illinois, where the rule is as we have stated; and as, under the federal statute, creditors are given the same remedies in the federal courts for the enforcement of their judgments as they possess under the law of the state in which they are proceeding, it is clear that Miller's case is but the reflection of the law of Illinois upon that subject. Rev. St. U. S., section 916. As we have seen, the rule is different in this state, and an execution was not a lien, even in the absence of statute, until actual levy. *Reeves v. Sebern, supra.* Furthermore, the doctrine of *lis pendens* in this state is not applied to personal property. *Miles v. Lefi*, 60 Iowa,

170 (14 N. W. Rep. 233). We have no doubt that the statutes under consideration, as well as the corresponding sections of the Revision of 1860, which are somewhat different in their provisions, were intended to provide a method which had superseded that recognized at common law, not simply additional to it. We conclude, therefore, that the common-law doctrine of equitable levy in cases like this, obtained by filing a bill in equity and the service of process, does not exist in this state. It follows that the liens acquired by plaintiff and Abel Ames & Co. upon the bank stock are prior to that of the appellee Willner.

VIII. The interest conveyed to James B. Purdy in the lots heretofore described was cast upon Hiram Purdy by the death of James, which occurred September 13, 1890. Prior to that time, judgments had been rendered in favor of Morris Willner, Abel Ames & Co., and Mrs. L. L. Ware in the order named. The court below held that said judgments attached as liens upon said real estate at the time it was so acquired by Hiram Purdy in the order in which they were rendered. Our statute provides: "Judgments in the supreme, district, or circuit court of this state, are liens upon real estate owned by the defendant at the time of such rendition, and also upon all he may subsequently acquire for the period of ten years from the date of the judgment." Code, section 2882. It is not questioned that these judgments became liens upon this after-acquired real estate. The contention is as to whether they became liens in the order of their rendition or equally as of the date that Horace Purdy acquired the property. In *Relfe v. McComb*, 2 Head, 559, it is said: "No lien upon the property existed at law in favor of either creditor previous to the reconveyance of the legal title on the 25th of April, 1858; and the moment the legal title was reinvested in McComb the liens of the

several judgments attached, together, upon the property at the same instant. This being so, no priority of satisfaction can be claimed by either over the other. All stand upon exactly the same footing as respects the proceeds of the sale of said property; and the plain principle of reason and of law in such a case is that the fund shall be distributed among them all *pari passu.* Neither is entitled to any preference." In *Barth v. Makeever,* 4 Biss. 206, Fed. Case No. 1,069, it is held "that judgment liens attach on subsequently acquired lands at the date of their acquisition." In *Moody v. Harper,* 25 Miss. 484, the court says: "The great object of the law was to protect the creditor against conveyances and transfers by the debtor of his property after judgment, and to force the purchaser to take it in such case charged with the lien. The debtor could not convey what he did not own; and when he had no estate which he could convey at the time the judgment was entered against him, he, of course, had nothing which it could bind. It is certainly true that a prior lien is entitled to a prior satisfaction. But the lien itself must exist. It is but a charge upon property for a particular purpose; and where there is no property, of course there can be no lien. Mere priority of judgment under the act of 1824 gives no right to a prior satisfaction, unless it creates a lien; and then the right to such satisfaction is confined to the thing upon which the lien operates. It will thus be seen that the judgment under which the plaintiff claims constituted no lien on the lots in controversy till Shields became the owner thereof." See, also, *Cayce v. Stovall,* 50 Miss. 396; Freeman, Judgments, section 368; 12 Am. & Eng. Enc. Law, 114; Black, Judgments, section 432; *Kesterson v. Tate,* 94 Iowa, 665 (63 N.W. Rep. 350). See, also, *In re Hazard's Estate* (Sup.) 25 N. Y. Supp. 928 (36 N. E. Rep. 739). A contrary holding has been made in Oregon. *Creighton v. Leeds,* 9 Or. 215. The judgments

attached to this property when Hiram Purdy acquired it, and neither had priority over the other.

The decree below is affirmed upon the appeal of the defendants Purdy, and it is also affirmed upon the appeal of the plaintiff and of Abel Ames & Co., with the modification that the deed from Hiram Purdy to his wife, dated August 11, 1889, conveying the estate which he had inherited from his daughter Sarah Ann Plume, be set aside, and said property be held subject to the judgments against him; and that the liens of said several judgments be held to have attached alike to the estate inherited by Hiram Purdy from his son, James B. Purdy, deceased, on September 13, 1890; and that the judgments of plaintiff and of Abel Ames & Co. be decreed to be liens upon the sixteen and two-thirds shares of bank stock prior to the judgment of Morris Willner. The cause is therefore remanded for the entry of a decree in conformity with this opinion. —*Modified and affirmed.*