## BRIDGMAN & CO. v. McKISSICK AND BONE.

1. EQUITABLE INTEREST IN REAL ESTATE. Chapter 127 of the Revision of 1860 applies as well to equities of the debtor in real estate as to moneys, choses in action and other personal property; but as to real estate the remedy which it provides is merely cumulative.

2. SAME: DILIGENCE. The lien of a judgment attaches to an equitable interest in real estate, and it may be subjected to the satisfaction of the judgment by apt proceedings in chancery for that purpose, but cannot be thus subjected by proceedings at law. A junior judgment creditor, by first instituting equitable proceedings to subject the property to the payment of his debt, acquires a priority of lien over a senior judgment creditor who is less diligent.

## Appeal from Monroe District Court.

### TUESDAY, DECEMBER 8.

A PROCEEDING in the nature of a creditor's bill. The complainants' statement is, that on the 10th day of July, 1861, they obtained a judgment by confession against James McKissick, for the sum of $640, together with costs of suit; that in the fall of 1860, the said James McKissick purchased of one George Roe the north half of the northwest quarter, and the southeast quarter of the southwest quarter, section 17, township 72, N. R. 16 W., paid for the same, and took the title in the name of his wife, Ellen, for the purpose of defrauding his creditors, among whom, at that time, were the plaintiffs; that said McKissick is wholly insolvent and has no property or means out of which they can satisfy their judgment, except the lands just described, the legal title of which, without consideration, was fraudulently placed in the name of the said Ellen, whereby the process of the Court has been obstructed, which obstruction they ask may be removed. They further represent that the defendant, John Bone, is a judgment creditor prior in point of time to themselves, but that he had taken no steps in equity to remove the legal obstruction specified to the title of said real estate, and that they are now to be preferred to him on account of their superior diligence. Hence they make him a party defendant with McKissick with the usual prayer for relief.

A few days after the filing of this petition, to wit: on the 13th day of August, 1861, the plaintiffs filed an amended petition, by having an execution on their judgment returned *nulla bona*, and an attachment sued out and levied upon the property in controversy, according to the provision of chapter 127, page 616, of the Revision of 1860.

In their answer James and Ellen McKissick confess the matters and things set out in the plaintiff's bill. John Bone's answer is in the nature of a cross-bill. He admits the entire insolvency of McKissick, and that he obtained the land in controversy and placed the title thereof in his wife in the manner and for the purpose stated in the bill, claims, however, that he is a senior judgment creditor and entitled to the first satisfaction out of the proceeds of said land; that he commenced his suit by attachment in January, 1861, obtained his judgment, in May following, for $439.49, and on the 17th of August thereafter had the land in dispute sold at sheriff's sale, and bought the same in for $200 on his judgment. Having thus acquired a prior right, by virtue of his attachment, judgment and subsequent purchase at sheriff's sale, as he claims, and thereby exercised all the diligence required by law, he prays relief, asking that the plaintiffs' bill may be dismissed and his title quieted and confirmed as against McKissick and his wife.

This answer and cross-bill was demurred to by plaintiffs, to the effect in substance, that the same did not state facts, which in law or equity could operate to defeat the relief sought by the plaintiffs in their bill, or entitle the defendant, Bone, to a prior satisfaction of his claim. At the November Term of said Court, 1861, the questions raised by the demurrer were argued and taken under advisement by the Court until the succeeding term. On the 14th day of January, 1862, both parties amended their respective pleadings; the plaintiffs by correcting a slight mistake in

the description of one of the tracts of land.    In doing so
a second attachment under the special provision of chapter
127 of the Revision of 1860, aforesaid, was sued out, levied
and returned on the same day, upon the land in contro-
versy, describing the same correctly.    The defendant
Bone's amendment consisted in stating, that on the day
named he had an execution returned unsatisfied upon his
judgment, and had issued, levied and duly returned a writ
of attachment upon the land in question, sued out under
the provisions of said chapter 127 of the Revision of 1860.
The Court, upon deliberation, sustained the demurrer.
The defendant electing to stand upon this ruling, appeals
from the final decree which was entered for plaintiff.

*J. W. Robb* for the appellant, cited the following authori-
ties: Rev., 1860, § 4105; *Blain* v. *Stewart,* 2 Iowa, 381;
*Denegre* v. *Haun et al.,* 13 Id., 241; *Myers, Fall and Collins
et al.* v. *Hewett et al.,* 16 Ohio, 451.

*T. B. Perry* for the appellee.

The judgment creditor who first files his bill in equity
to subject the equitable interest of the debtor in real estate
to the payment of his debt, acquires a priority over senior
judgments.    *Corning* v. *White,* 2 Paige Ch., 567; *Burrell*
v. *Leslie,* 6 Id., 445; *Lucas* v. *Atwood,* 7 Stewart, 348;
Fonb. Eq., 237; *Van Cleave* v. *Groves,* 3 Greene Ch., 330;
*Miers and Coulson* v. *The Zanesville and Maysville Turnpike
Company,* 13 Ohio, 197; *Edmonston* v. *Lyde,* 1 Paige Ch.,
637.

LOWE, J.—James and Ellen McKissick having fully
admitted the facts stated in the bill, may be regarded as
withdrawn from the contest, and it then remains to be
determined, which of the two creditors has the preferable
equity, or is entitled to the prior satisfaction out of the
property in question, under the facts disclosed by the

pleadings in the case.    This is no unimportant question
and should receive a solution which shall not only accord
with the established rules of equity, but which shall best
harmonize with the policy and objects of those provisions
of the Revision which seem to have been enacted to meet
cases of this description.   In the case of *Harrison* v. *Kramer
et al.*, 3 Iowa, 543, it was held that a judgment under the
laws of this State was a lien upon the equitable, as well as
the legal, interest or title which the debtor at the time had
in real estate.    It was also substantially held that where
such debtor had fraudulently conveyed such property to
defeat creditors, that such creditors, after judgment, might
adopt either one of two courses to remove the obstruction
interposed to prevent a legal sale, under execution of the
property, namely : to levy upon and sell whatever interest
the judgment debtor may have in the premises, and after-
wards go into chancery to quiet the title and remove the
cloud : or they may in the first instance, after the return
of an execution unsatisfied, commence their suit in equity to
remove the obstruction and subject the property to the
satisfaction of the claim.    And this we understand to be
the doctrine of the books, as well as the practice of parties
litigant under the sanction of the courts.    In this case
Bone, the elder judgment creditor, pursued the former
course, filing his cross-bill, however, as an answer in the
plaintiffs' equity suit, and is, therefore, subsequent in point
of time in the commencement of his chancery proceeding.
The plaintiffs adopt the latter course, conforming their pro-
ceeding as nearly as may be to the requirements of chap-
ter 127 of the Revision of 1860, in relation to equitable
actions supplemental to execution.   And it may here be
remarked that the provisions of this chapter have been
added to the law of executions in this State since the
decision in the case of *Harrison* v. *Kramer et al.*, *supra.*
And whilst primarily the object of this chapter was to

assist and facilitate the creditor in reaching the equities of his debtor in moneys, choses in action, secret trusts and personal property, it does, by the expression, *" or any other property to which the defendant is entitled,"* also include his equities in real estate. Still we are willing to admit, that so far as real estate is concerned, the remedy afforded by this chapter is only cumulative, that is to say, the lien created upon the interest or property to be reached by the issuing and levy of the attachment contemplated by §§ 3393 and 3394, in said chapter is as effectually secured by the filing of a bill in chancery for the same purpose, for it has long been the settled doctrine in equity that the filing of such a bill in chancery has the effect of creating a specific equitable lien upon the thing or property sought to be subjected to the execution, for the reason, perhaps, that the commencement of such a suit operates as à *lis pendens* notice, and stops all successful alienation of the property in question, and keeps it within the control and jurisdiction of the Court.

Now, in this attitude of the case, we are to determine which of these parties is entitled to priority. If, in adjusting their rights in the premises, we limit ourselves to the provisions of chapter 127 of the Code aforesaid, the question must be settled in favor of the plaintiffs, because they first instituted their equitable action agreeably to its requirements, sued out and levied their attachment, and secured their lien; showing thereby superior legal diligence, which entitles them to preference as the reward of their vigilance.

Again, if we decide the question according to the weight and number of authorities in cases involving the same principle or rule of practice, we would have to rule in favor of the plaintiffs, because it has been long and repeatedly laid down, not only that a mere equity or secret hidden trust, like the one at bar, is not available at law by sale on execution, but that the creditor, whether senior or

junior, who shall first commence his equitable proceeding to reach and subject the property to execution, obtains thereby, not only a specific lien, which will arrest and control the alienation thereof, but which will give him a superior equity on the same, for the satisfaction of his claim. The following are some of the authorities which will sustain the above rule: *Edmeston and Riddle, Exrs.*, v. *Lyde et al.*, 1 Paige, 637; *Corning & Norton* v. *White*, 2 Paige, 567; *Burral et al.* v. *Leslie et al.*, 6 Id., 445; *Gorden* v. *Lovel*, 21 Me., 251; *Miers & Coulson* v. *The Zanesville and Maysville Turnpike Co.*, 13 Ohio, 197; *Eaton* v. *Patterson*, 2 Stew. & Port., 9; *Hendricks* v. *Robinson et al.*, 2 John. Ch., 283; *Brinkerhoof et al.* v. *Brown et al.*, 4 Id., 671; *McDermutt et al.* v. *Strong et al.*, Id., 687; *Elgell* v. *Haywood*, 3 Atk. R., 357; 2 Stew., 378. But is said, that when it is conceded that a judgment is a lien upon any interest which the debtor may have in real estate, legal or equitable, that this concession must determine the question of priority in favor of the oldest lien holder, and change the rule as it exists at common law, in the chancery practice, in regard to the rewards of vigilance.

Plausible as this proposition would seem, it is nevertheless to be received at least with some qualifications. In the first place, the General Assembly of this State has legislated on this subject, and expressly provided for the method of reaching the debtor's equities, by an equitable action and attachment, whereby a lien is created in favor of the party instituting such proceedings. The implication is apparent that, in the judgment of the law-giving power, the lien which the creditor obtains by virtue of his judgment upon some interest or equities other than those which amount to a legal right is not available at law. The facts of this case will vindicate the soundness of their conclusion, as well as illustrate the non-availability at law of such a lien.

McKissick, the judgment debtor, never had the legal title of the land in controversy vested in himself. He bought and paid for the same, and had the title conveyed to his wife. This occurred the year before either of these creditors obtained their judgments. No allegation of fraud is made as to George Roe, the vendor. Indeed, the circumstances attending the transactions repel any probable imputation of the kind. What interest, then, we inquire, had James McKissick in this land? If anything, it was a secret resulting trust, available to him only at the good pleasure of his wife, not a resulting trust or equity which he could enforce in a court of equity, because it had been fraudulently created; and he could not, therefore, take advantage of his own wrong. Again, he had not the legal title, and never had. Upon the supposition that the conveyance to McKissick's wife was void, because fraudulent, the legal title would yet remain with Roe. We would, then, again ask what did Bone get by his levy and purchase? Simply nothing; because the execution debtor had nothing in that land which was tangible at law or vendible upon execution. All that he had done thus far was a barren achievement, productive of no benefit; for it did not have the effect to prevent alienation; it did not invest him with any right that he was not liable to lose at any moment by a sale from Ellen McKissick to an innocent purchaser for a valuable consideration. It is true, he could follow up his proceeding at law by a suit in equity, which, as a *lis pendens* notice, would have the effect to prevent any further *bona fide* transfers of the property; and the chancellor, upon being informed of all the facts in the case, would ratify his purchase at sheriff sale, and give to him the legal title of the property. But his decree to that effect would be founded, not so much upon the previous levy and sale as upon the fraud of the debtor, who had voluntarily but unlawfully placed his means beyond the

reach of creditors, and at the secret disposal of his wife; for such an act was adverse to and broke in upon the just rights of creditors, and it is the business of courts of equity, as it is the policy of the law, to protect and conserve their rights, and not to allow even the claims of affection to supplant the superior obligations of justice.

Whilst, then, under the statutes of this State, a judgment at law may be a lien in some sense upon a secret trust, or upon equitable rights, yet it is not in the sense to charge or affect a subsequent *bona fide* purchaser, without notice. It is a lien only effectual in equity; and when a creditor loiters by the way, and neglects to make the same available by a prompt resort to his equitable action, he ought not to complain of hardship if a more diligent creditor gains a preferable equity over him by doing an act which at once stops alienation, saves and brings the property within the control of a court of equity, that it may be subjected to the payment of debts, for *non constat*, that the delaying creditor, by his *laches*, would not have lost the property by a legal transfer thereof.

In short, we suppose the statute, in this State, has made no change in the rule which rewards vigilance, but has rather confirmed that rule by the provisions found in chapter 127 of the Revision of 1860, above referred to; and that, while it may be competent for a creditor, even in a case of this description, to resort first to his execution at law, sell and buy, and then to his bill in chancery, yet, that he adopts this course at his peril, first in losing the property in the meantime by a valid sale, second in losing his priority by another creditor, who, having exhausted his remedy at law by the return of an execution unsatisfied, shall be the first to pursue the property in equity, and thereby gain a precedence for the payment of his claim.

In making this disposition of the case before us, we would have it understood that our reasoning upon the

principles involved apply, or is intended· to apply, to fraudulent conveyances of real estate to hinder and delay creditors, leaving open the rule to be established where the equitable interest of an honest debtor is sought to be reached either by the equitable or legal process of the court. The judgment below will be

Affirmed.

WRIGHT, J.—I concur in the conclusion that this judgment ought to be affirmed, but not in the reasoning used in the foregoing opinion.