MARTHA J. PINKHAM V. JOHN H. PINKHAM, APPELLEE, AND EMMA E. RYAN ET AL., APPELLANTS.

OCTOBER 3, 1900. No. 11,168.

1. **Title to Real Estate:** AMENDMENT OF ANSWER: REFORMATION OF DEED. In a controversy over the title to real estate, appellants claimed as heirs, and appellee as grantee, under a deed of conveyance from the same party. On appeal to this court, the instrument under which appellee claimed was construed to be testamentary in character, passing no present estate. *Held,* After the action was remanded for further proceedings, with directions to proceed according to law, the appellee might properly amend his answer by pleading a mistake in the drafting of the instrument, in that it was stated "this deed is to take effect and be in full force from and after my death," when the true intention and desire of the parties thereto was to reserve to the grantor only a life estate in said premises, and asking for a reformation accordingly.

2. ———: ———: ———: TESTAMENTARY DEED. In proceedings in an action as above mentioned, the opinion of this court, con-

struing the instrument to be testamentary in character, will not be deemed *res adjudicata* as to the alleged mistake pleaded by appellee in his amended answer.

3. **Appeal:** REVERSAL AND REMANDMENT. Where, upon appeal to this court, the judgment of the trial court is reversed, and the case remanded for further proceedings, with directions to proceed according to law, *held*, that the case was remanded generally, and not specially or for any particular purpose.

4. ——: ——: SITUATION OF PARTIES: DISCRETION OF COURT. Where, in an equitable action, the decree of the trial court is reversed, and the case remanded generally, the situation of the parties is the same as at the beginning of the trial, and, in the exercise of a sound discretion vested in the trial court, amendments of the pleadings may be made, not inconsistent with the opinion of the appellate court, and a trial of all the issues had *de novo*.

5. **Deed:** CONSIDERATION: THIRD PARTY: MISTAKE: CORRECTION. A deed of conveyance founded upon a consideration to be paid to a third party therein named, and for labor expended on the premises conveyed, and for care and support of the grantor, is not a voluntary instrument, and mistakes in its execution· may be corrected in a court of equity.

6. **Conveyance:** REFORMATION. An instrument intended to operate as a conveyance of land is reformable in character, and where, in its drafting by a notary public, words are used which give to it the character of a testamentary instrument, passing no present estate, when the intention of the parties was to reserve to the grantor only a life estate in the premises conveyed, such mistake may be corrected in a court of equity to conform to the true intention of the parties to such instrument.

7. **Title:** POSSESSION: EQUITABLE DEFENSE: STATUTE OF LIMITATIONS. Where the title of a person in the undisputed possession of land is challenged, he may set forth any equitable defense in favor of his right to the property, and the statute of limitations will not run. so as to prevent him from setting forth such defense.

8. **Statute of Limitations:** CONSTRUCTIVE NOTICE. In a controversy where the relief demanded consists in the correction of an alleged mistake made in the drafting of a deed conveying land, which was executed several years before the mistake was pleaded, and the correction of the mistake involved no change of actual possession or disturbance of investments made by the party against whom the correction is sought, and leaves the enjoyment of the property to go on in harmony with the prior acts of the parties in interest, the statute of limitations being pleaded, *held*, that the statute begins to run only from the discovery of the mistake, or of such fact or facts as would put a

person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to such discovery. *Ainsfield v. More*, 30 Nebr., 385, followed.

9. **Deed:** CONSIDERATION: EQUITABLE LIEN. Where, in a deed convey- ing real estate, as a part consideration therefor, it is provided that the grantee shall pay to a person therein named $50 per annum for ten years, which payment is assumed by the grantee by the acceptance of the deed, *held*, that the sum so to be paid is, and was intended to be, a charge upon the land, and its pay- ment secured as an equitable lien on such land.

APPEAL from the district court of Otoe county. Heard below before RAMSEY, J. *Affirmed in part.*

*Ricketts & Ricketts* and *H. H. Wilson,* for appellants.

*J. C. Watson, F. E. Brown* and *Frank Irvine, contra.*

HOLCOMB, J.

The present controversy arises over the title to certain real estate claimed by appellants, as heirs, and by the appellee, as grantee of one Calvin Pinkham, now de- ceased. The validity of the instrument under which ap- pellee claims title is challenged on the ground of fraud and undue means in its procurement, and it is also averred in the petition that it was executed in anticipa- tion of the death of the grantor as a final disposition of his property, and that, after recovery, he sought to revoke and cancel the same, but was prevented from so doing through fear of bodily harm at the hands of the grantee. The case has once been before this court, the opinion then rendered being found in *Pinkham v. Pinkham*, 55 Nebr., 729. It is there held that the instrument under which appellee's right to the land is to be determined, al- though in form a deed, which by its terms was to operate only after the death of the grantor, was testamentary in character, and passed no present estate in the premises therein described. The decree of the trial court, quieting title in appellee, was reversed, and the cause remanded for further proceedings, with directions to proceed ac- cording to law. After the case was remanded, appellee

applied for and obtained leave to amend his answer so as to plead mistake and error in the manner of drawing the deed, it being pleaded in the amendment that the recital, "This deed is to take effect and be in full force from and after my death," should read according to the true intention and desire of the parties, so as to reserve to the grantor only a life estate in said premises; and asked for a reformation of the instrument by a correction of the alleged mistake, so as to make it conform to the desire and intention of the parties. Issues were joined under the amended pleadings, and a trial thereof resulted in a second decree in favor of appellee, reforming the instrument as prayed for, and quieting the title in the said John H. Pinkham, appellee. Appellants claim that the character of the instrument under which appellee claims was litigated in the first trial, and that the opinion rendered in this court on the first appeal, construing the instrument as testamentary in character, has become "the law of the case," thereby preventing further litigation regarding the said instrument.

It is very true that a decision by the appellate court upon any question presented to it in reviewing the proceedings of the trial court ordinarily will not be re-examined, and becomes the law of the case, binding upon the court and the parties in the further litigation of the case, from the consequences of which the court can not depart, nor the parties relieve themselves. *Omaha Life Ass'n v. Kettenbach*, 55 Nebr., 330; *O'Donohue v. Hendrix*, 17 Nebr., 287; *Hiatt v. Brooks*, 17 Nebr., 33. It is not, however, we assume, in the present case, a question as to what the rule is, so much as to whether it is applicable to the point under consideration. On the first appeal it was determined that the deed, in the form in which it was written, was testamentary in character, and passed no present estate in the land. That question has been adjudicated, and will not be, nor is there any request to have it, further examined into or overturned.

Can it be said that the question as to the right of ap-

pellee to have a reformation of the instrument under which he claims, has been determined in the opinion first rendered? We think not. This proposition is entirely different from the construction of the instrument according to the wording then on the face of it. It is incontrovertible that in the first opinion the question under consideration was as to the legal effect of the instrument in its present form, while in the present hearing we are confronted with the proposition of correcting an alleged mistake, an entirely separate and independent proposition from that first considered. The latter question brings into the case an element not heretofore considered or determined, and the doctrine of the law of the case would therefore seem to be inapplicable. It is, however, urged that, the character of the instrument being in issue in the first trial, the defendant was required to set forth his defense with respect to the alleged mistake, which, it is admitted, he might have done on that trial, and that, because of his failure so to do, the opinion on the first appeal has rendered the character of the instrument *res adjudicata*. We are cited to a number of cases to support the rule, that all defenses that might have been interposed will be deemed to have been adjudicated in the trial of a cause, and are, therefore, *res adjudicata*, and invulnerable against collateral attack. We regard the authorities cited as in point only in cases that have been finally adjudicated, but not as applicable to different steps in the proceedings of the same action. If carried to its logical conclusion, the proposition advanced would prevent amendments in the proceedings of a case in any stage thereof, after a point in controversy had been ruled upon. It is to be observed that the amendment made is consistent with the position of the appellee during all the proceedings had in the case, nor does it conflict with, or seek to overturn, the conclusions reached in the first opinion filed. He has been, during the entire proceedings, claiming the land in controversy by virtue of the instrument as a deed of conveyance of the land, and not

Pinkham v. Pinkham.

as a testamentary writing of the grantor. When this court found that, by its wording, although in form a deed, it was testamentary in character, and passed no present estate, the appellee alleged mistake in its drafting, and prayed for a reformation to conform to the alleged intention of the parties, such action being in harmony with his contention during the whole course of litigation. We regard the propositions advanced with respect to the law of the case, and *res adjudicata*, as being subordinate to, and hinging upon the more important one of whether the appellee may properly amend his answer in the manner sought, and at the time the amendment was made. If, under a proper construction of the rules of procedure, amendments to pleadings are permissible after a case has been reversed on appeal, and remanded for further proceedings, it would seem that, in the present instance, appellee might rightfully amend his pleading, and would not be concluded by the prior litigation and the opinion rendered as to matters brought in issue by the amendment.

It is urged that, the case being remanded "for further proceedings," it should be proceeded with only with a view of determining the rights of the parties litigant under the instrument as construed in the opinion, and that it was error to permit an amendment of the pleadings and relitigate the issues as amended. Our conception of the case is that it was remanded generally, and without directions, to be proceeded with in any particular manner. The direction was "to proceed according to law." Had there been directions to proceed in a particular manner therein specified, doubtless no further proceedings inconsistent with the directions in the mandate could be permitted. The appellee and all parties to the action would be precluded from pursuing a different course than that pointed out, and the only remedy would have been by a motion for a rehearing and modification of the opinion. No special directions being given, the parties, we think, were justified in regarding, as they did,

the remanding of the case as being general, there to be proceeded with according to the established rules of procedure, to be determined by the trial court, in the exercise of a sound discretion in it vested. It is a firmly established rule of practice in this and other states to permit amendments not inconsistent with the opinion of the supreme court, when a judgment in an action in equity has been reversed on appeal and remanded generally to the district court for further proceedings. *Troup v. Horbach*, 57 Nebr., 647; *Badger Lumber Co. v. Holmes*, 55 Nebr., 473; *Cahn v. Tootle*, 48 Pac. Rep. [Kan.], 919; *Heidt v. Minor*, 45 Pac. Rep. [Cal.], 700; *Interstate Savings & Loan Ass'n v. Knapp*, 55 Pac. Rep. [Wash.], 931; *Jennings v. Parr*, 32 S. E. Rep. [S. Car.], 73. In *Badger Lumber Co. v. Holmes, supra*, it is held: "Where a decree in favor of plaintiff, foreclosing a mechanic's lien, is reversed on an appeal by the defendants, and the cause remanded to the trial court for further proceedings, the situation of the plaintiff is precisely the same as if his rights had never been tried." Says SULLIVAN, J., in the opinion in *Troup v. Horbach, supra:* "The judgment was reversed, with authority to the trial court to take such further action, in the interest of justice, as the law would sanction and a sound discretion dictate or approve. Within the bounds of judicial discretion the court might grant, or refuse, leave to amend the pleadings. It might decide the case on the record already made. It might take additional evidence, or it might try all the issues *de novo.*" Applying the foregoing rules to the case at bar, we perceive no meritorious objection to the amendment allowed. The appellee in nowise seeks to change his position, or invoke a remedy inconsistent with his former attitude. His contention has been all along, as we understand it, that the deed of conveyance was intended to convey to him all the estate of the grantor in the premises, except a life estate therein reserved unto the grantor; and in the course of proceedings, when amendments are allowable, he applies to amend his pleadings, so that he may be permitted to

establish by proof the claims for which he has been contending. It is said that he has elected to stand on the instrument as written, and is therefore precluded from amending his answer. In considering this question, we are not to confuse his defense with the idea that he has been claiming under an instrument as testamentary in its character. He has at no time assumed this position. He relies only on the instrument as a deed, conveying to him a present estate. This, according to his position, was the contract of the parties. As to the legal effect of the wording of the deed, they are found to be mistaken. He therefore mistook the form of procedure by which his defense might be established, and he asks, at a seasonable opportunity, to amend his pleading so as to effectively prove the contract or agreement, which he pleaded in the first instance and sought to maintain at all times thereafter. The amendment does not involve a shifting to an inconsistent position, or an effort to change the nature of the contract by which his rights are to be measured.

It is urged that for several reasons the instrument is not reformable, and that the amended answer and the proof is insufficient to warrant reformation. It is said, the instrument, being testamentary in character, can not be reformed. For the purpose of considering this point, the instrument is not testamentary. A correction of the alleged mistake is not asked upon the theory that it is testamentary. It is contended that it is an entirely different instrument, one that may be reformed; and the fact that a mistake, if there is one, throws it into the class of testamentary instruments, will not prevent the correction of the error, thereby removing it from the class to which it does not belong. It is the instrument, as corrected, which determines the applicability of the rule which shall govern in its reformation. Neither do we regard it as a voluntary instrument, requiring the application to it of the rules governing errors and mistakes in the execution of such instruments. It was not voluntary in the sense that the property was a gift to the appellee.

It was based upon an expressed, sufficient and valuable
consideration, in that it required the payment of $500 in
installments to the Lilly P. Riddill therein named. This
obligation the appellee was compelled to, and did, assume
by the acceptance of the deed. There was a further valu-
able consideration, as disclosed by the record, in the
labor performed and energy expended by the appellee in
cultivating and improving the land, caring for and sup-
porting the deceased in his lifetime; all of which was
done in view of the expressed intention of the deceased
to give to appellee the property for such labor, care and
support. This is a valuable consideration, and amply suf-
ficient to justify reformation of the instrument, if a mis-
take has occurred in its execution. 15 Am. & Eng. Ency.
of Law [1st ed.], p. 678; *Baker v. Pyatt*, 108 Ind., 61. The
mistake, if any, it is insisted, is not such as, under the
circumstances, justifies a reformation. The deed was exe-
cuted in the absence of the grantee. A notary was called
to draft the instrument. It appears reasonably satisfac-
tory from the evidence that it was the intention of the
grantor to convey the land upon the consideration here-
tofore mentioned to his grandson, the appellee, reserving
to himself a life estate therein. The notary's testimony is
directly to this effect, and other circumstances corrob-
orate and confirm his testimony. This is the probable
and natural inference to be arrived at from an examina-
tion of the testimony bearing upon the point. The notary
failed, in drafting the conveyance, to correctly express
the intention of the grantor. The mistake was not a glar-
ing one. The notary may easily have misunderstood the
purport and legal effect of the language used, and thereby
made the instrument convey an entirely different mean-
ing from that intended, and which the parties believed
it did convey. They treated it as an ordinary deed of con-
veyance, reserving to the grantor the use of the land until
death, or a life estate therein. That the mistake was not
readily detected or discernible, is made manifest from the
fact that it was held to be a deed as contemplated by the

parties until construed to the contrary in this court on the first appeal. Such a mistake, made under the circumstances surrounding the case at bar, does not, we apprehend, fall within any legal rule presented to us, which could bar the instrument from being reformed, and the mistake corrected to harmonize with the desires and intentions of the parties thereto.

The mistake was one of the conveyancer. The grantor relied upon him to express in the deed his reservation of a life estate in the property conveyed. Whether the mistake can be clearly defined as one of fact or of law, is not so important. It possibly partakes of some of the elements of both. If it failed to correctly express the intention of the parties, to the effect that a life estate should be reserved to the grantor, and by the use of inapt words on the part of the notary the instrument was made testamentary in character, we fail to perceive any valid objection to its correction. The fact that the mistake in the use of the wrong words, if there was a mistake, rendered the instrument of a different character than the one intended seems to be immaterial. A mistake would have occurred had other inapt words been used, putting it in another class of instruments, or, perhaps, using words which failed to constitute a legal reservation of a life estate to the grantor in the premises conveyed. In such case, who would doubt the right of the parties to reform the instrument to conform to the actual intention of the parties and give to the grantor a life estate therein, according to the terms of the agreement? Whether the mistake be one of law or fact, or both, it seems to be a doctrine well supported by the authorities, that, if the instrument fails to correctly express the intention of the parties, equity will intervene and grant to the parties injured such relief as they may be entitled to. Upon this subject, Shaw, C. J., in *Canedy v. Marcy*, 13 Gray [Mass.], 373, says: "It is the mistake of the parties to the deed which we are to inquire into; and if they were misled by a misplaced confidence in the skill of the scrivener, it

43

can hardly be said to be a mistake of law and not of fact on their part." And in the same case it is said: "We are of opinion that courts of equity in such cases are not limited to affording relief only in case of mistake of fact; and that a mistake in the legal effect of a description in a deed, or in the use of technical language, may be relieved against." In further illustration of the principle, we quote from *Lant's Appeal*, 95 Pa. St., 279, wherein it is said: The case is equally within the principle of equity, viz., "a paper executed by a person, who had a perfect legal right to dispose of her property and intended to do so, but by a plain mistake of the scrivener, it was drawn in the form of a will, when it ought to have been a deed or declaration of trust. Surely it must be in the power of a court of equity in this commonwealth to correct so gross and palpable a mistake, to reform the instrument and decree it to be such as it ought to have been, so as effectually to carry out the intention of the parties." In *Clayton v. Freet*, 10 O. St., 544, in the first paragraph of the syllabus, it is stated: "A mistake in the legal effect of a description in a deed or in the use of technical language may be relieved against. Where parties are shown, through ignorance and mistake, to have conveyed an estate to M. S. and her heirs, when the intention was to make a provision for her children, as well as herself, and to convey the land to M. S. for her life, remainder to her children, held, that the mistake might be corrected." In support of the rule above expressed may also be cited the following authorities: Story, Equity Jurisprudence, sec. 52; *Evants v. Strode*, 11 Ohio, 480; *Stedwell v. Anderson*, 21 Conn., 139; *Cooke v. Husbands*, 11 Md., 492. Many other opinions of courts of last resort, holding to the same proposition, may be found by reference to 15 Am. & Eng. Ency. of Law [1st ed.], p. 643, note 2, and same volume, p. 673, note 3.

It is urged that the statute of limitations operates as a barrier to prevent the appellee from reforming the instrument under which he claims by correction of the al-

leged error.   There are, we think, two substantial rea-
sons why this plea can not be made available: first, the
appellee is in possession of the land under claim of title
to the property; his right and title is assailed by ap-
pellants.   He may, in such a case, rightfully present any
defense, legal or equitable, to sustain his title to the prop-
erty, irrespective of the running of the statute.   When
his right of possession is attacked, a cause of action ac-
crues, by which he may plead and prove any equitable
defense of which he may be possessed.   As long as his
title is undisputed, and he is in the peaceable possession
of the property thereunder, the statute of limitations
would not run, so as to prevent him when sued from set-
ting up any equity he has in defense of his possession.
*Dutertre v. Shallenberger*, 21 Nev., 507; *De Guire v. St.
Joseph Lead Co.*, 38 Fed. Rep., 65; *Love v. Watkins*, 40 Cal.,
547.   The same rule is applied in this state, wherein, in
actions of ejectment, the party is permitted to prove any
equitable defense in favor of his right of possession.
*Franklin v. Kelley*, 2 Nebr., 79; *Staley v. Housel*, 35 Nebr.,
160.   But, secondly, viewing the action as an affirmative
one on the part of the appellee, we regard it as having
been brought within the limitation as to the time pro-
vided by statute.   This conclusion is not reached by in-
terpolating into the statute something it does not con-
tain, as is suggested must be done, but rather by an
ascertainment and determination as to the time when a
cause of action has accrued within the meaning of the
statute.   This question was thoroughly considered in the
case of *Ainsfield v. More*, 30 Nebr., 405, and, as it appears
to us, that opinion must be considered as decisive of the
question under consideration.   In that case, after quot-
ing from a number of authorities, it is said by COBB, C.
J.: "In the case of *Parker v. Kuhn*, 21 Nebr., 413, which
was one of alleged fraud, and not of accident or mistake,
this court held that 'an action for relief on the ground of
fraud may be commenced at any time within four years
after the discovery of the facts constituting the fraud,

or of facts sufficient to put a person of ordinary intelligence and prudence on an inquiry, which, if pursued, would lead to such discovery.' A full consideration of the cases cited leads me to the conclusion that a case of relief from the effect of accident or mistake, like that at bar, comes within the same rule of limitation." We have carefully considered the opinion quoted from and the reasoning upon which it is based, as well as the authorities in support thereof, and find no reason for .dissenting from it. Applying the rule therein laid down to the present case, the defense interposed in the amended answer of the appellee is not barred because of lapse of time after the cause of action accrued. In *Duvall v. Simpson*, 53 Kan., 291, it is held: "While the lapse of time will bar equitable relief against a mistake made in describing land intended to be conveyed, the period of limitation will not begin to run until the discovery of the mistake, or until the time at which, by the exercise of reasonable diligence, it might have been discovered." It is said in the opinion: "If that statute was applicable and began to run when the instrument was executed, the claim would be well founded; but in cases of fraud or mistake, the statute begins to run from the time of the discovery of the fraud or mistake and not before, or from the time at which, by the exercise of reasonable diligence, it might have been discovered." In harmony with the opinion quoted from are *Dennis v. Northern P. R. Co.*, 55 Pac. Rep. [Wash.], 210; *Harris v. Ivey*, 21 So. Rep. [Ala.], 422; *Hayes v. Carroll*, 76 N. W. Rep., [Minn.], 1017.

In the instrument under which appellee claims title to the land therein described is found the following provision: "The further and additional consideration of this conveyance is, that the said John H. Pinkham shall pay to Ella [Lilly] P. Riddill, my great grand daughter, fifty dollars per annum for ten years from the taking effect of this deed." It is urged that it was error to quiet title to the property in the appellee as against the said Lilly P. Riddill; that, under the provisions quoted, she held an

equitable lien on the land in the sum provided in the deed, to be paid her in installments, as therein mentioned, and the payment of which was assumed by appellee by his acceptance of the deed. We are disposed to the view that the sum mentioned to be paid to the said Riddill is and was intended to be a charge upon the land, and its payment at the time mentioned made certain and effectual by making it a lien, to be satisfied by the grantee before his title to the property became clear and complete. We are of the opinion, under the pleadings and the evidence, that the rights of the defendant, Lilly P. Riddill, should have been fully determined and established in the decree rendered. *Richards v. Reeves*, 47 N. E. Rep. [Ind.], 232; *Thompson v. Lyon*, 20 S. E. Rep. [W. Va.], 812; *Bates v. Swiger*, 21 S. E. Rep. [W. Va.], 874.

The cause will be remanded, with directions to the trial court to find the amount owing to the said Lilly P. Riddill under the terms of the deed, and award her a lien on the premises therefor. In all other respects the decree is affirmed.

JUDGMENT ACCORDINGLY.