FRANK GOTTSTEIN, Appellant, v. EDA HEDGES et al., Appellees.

No. 39616.

DECEMBER 13, 1929.

REHEARING DENIED APRIL 16, 1930.

*Parrish & Huston* and *E. M. Willard*, for appellant.

*L. R. Forsyth* and *Swan, Martin & Martin*, for appellees.

MORLING, J.—The facts are stipulated. Under date of January 14, 1922, Peter Hopley signed and acknowledged a deed to defendant Wayland A. Hopley of a tract of land, "subject to grantee herein, his heirs or assigns, paying to Wayland A. Hopley, trustee, for the benefit of Eda May Hedges, the sum of $25,000 within ten years after the death of said grantor herein, with interest thereon at five per cent per annum from and after the March first following the death of said grantor herein, payable annually on March first of each year to said Eda May Hedges, during her natural life and at her death the said principal sum of $25,000 shall go to her surviving brothers and sisters, share and share alike, said Wayland A. Hopley being hereby named as the trustee of said trust fund * * *. Said grantee, his heirs or assigns having the right to pay said principal sum to himself as such trustee at any time before said ten-year period * * *. Should said Wayland A. Hopley not survive said Eda May Hedges then at his death the court shall appoint his successor who shall administer said trust fund and pay the net income therefrom to said Eda May Hedges during her natural life as above provided, and at her death said principal of said trust fund to go to her surviving brothers and sisters * * *." The deed was "delivered * * * to James G. Whitley to be held by him in escrow and to be delivered by the said James G. Whitley to the said Wayland A. Hopley upon the death of the said Peter Hopley * * * said deed was delivered by said James G. Whitley to said Wayland A. Hopley shortly after the death of Peter Hopley [which occurred March 9, 1926], who accepted said deed." The deed was recorded May 22, 1926.

Before the date of the deed, two judgments, and after its date (but in grantor's lifetime), a third judgment, were recovered by plaintiff against Eda (May) Hedges and Clarence Hedges in large amounts. Eda Hedges was insolvent for more than five years prior to the trial in May, 1928. Wayland A.

Hopley on May 26, 1926, purchased another judgment against Eda Hedges. The stipulation is:

"That the said Wayland Hopley claimed the right to retain the sum of $1,250 per annum until said judgment was satisfied; that said Wayland Hopley was notified on the ninth day of February, 1928, by Eda Hedges delivering to him a certain document of her intention not to accept the annuities created in her behalf by said deed * * * that this renunciation * * * is the first notice that Wayland Hopley had from his sister Eda Hedges in reference to her intention regarding said annuity, and that he never paid her any sum or sums under said annuity * * *; that the said Eda Hedges had never assigned or taken any act in relation to said annuity * * *; that, in his capacity as trustee, if such capacity now exists, he [Wayland Hopley] has received no sum or sums of money under the provisions of said deed, either as annuity or principal."

Eda Hedges, on February 9, 1928, executed an instrument by which she did "finally renounce and reject any and all benefits, interest, gifts and annuities which do, may or might accrue to" her under the deed in question, "and all provisions of said deed * * * whether the same merely constitute a contract obligation in my behalf or as the beneficiary of a trust, either actual, constructive, resultant or implied." Original notice in the present suit, accompanied by copy of the petition, was served on Wayland A. Hopley and Eda Hedges July 7 and 9, 1926.

Plaintiff's argument is:

"The so-called renunciation was not a renunciation in the sense that renunciation is usually interpreted, because the grantee had accepted the deed, which by its terms bound him to pay Eda Hedges a certain annual income. His acceptance of the grant with the reservation immediately vested in Eda Hedges a definite, certain, ascertainable property. This being true, the legal effect of the renunciation was a release or waiver in favor of the reversioners, the other heirs of Peter Hopley, who, under the deed, took upon the death of Eda Hedges. * * * the reservation in the deed in favor of Eda Hedges created in her an equitable interest in the land. It was a burden upon the land, attached to it an equitable mortgage, which the grantee, Wayland Hopley, assumed to pay when he accepted the deed. * * *

An absolute interest was established in favor of Eda Hedges, and under the equitable proceedings, her right and interest therein are reached by the lien therein established. * * * The $1,250 per year was intended by Peter Hopley, the grantor, to be a provision against want to his daughter, Eda. It was for her maintenance and support, and she acquired a mortgage or an equitable interest in this land when it was accepted by the grantee. * * * Eda Hedges had a property, a right, and interest that was accessible to the lien, under the statute, in equitable proceedings. If it was reached, then her renunciation does not avail her, nor does it avail the reversioners anything." "Acceptance vested in Mrs. Hedges at once the interest payable to her. * * * She can waive, release, or renounce, as she desires, and extinguish her right to the property, but not to the detriment of a creditor who had, under equitable proceedings, instituted by way of Section 11815 of the Code of 1927, fastened upon this property an equitable lien before she renounced. * * * a covenant in a deed of a grantee is of much deeper legal import than any legacy in a will, because not a legatee is present in this case to make an acceptance, but the grantee of the deed did accept the land, and thereby accepted for the beneficiary. * * * It took no express acceptance by Mrs. Hedges to make it good."

The provision made in the deed in favor of the judgment debtor was, as to her, a gift. We need not pause to discuss the question of who would take the gift in the event of renunciation by the donee. A gift, however created, whether by will or *inter vivos*, is wholly inoperative unless accepted by the donee. Cases post; 28 Corpus Juris 643. A creditor of the donee has no such interest, legal or equitable, as to enable him to control the right of the donee to refuse acceptance or renounce the gift. *Funk v. Grulke*, 204 Iowa 314; *Schoonover v. Osborne*, 193 Iowa 474; *Robertson v. Schard*, 142 Iowa 500; *Piekenbrock & Sons v. Knoer*, 136 Iowa 534, 540; *In re Estate of Stone*, 132 Iowa 136. While acceptance of a gift which is beneficial to the donee and which imposes no burden upon him may be presumed (*Kneeland v. Cowperthwaite*, 138 Iowa 193; *In re Estate of Bell*, 150 Iowa 725; 28 Corpus Juris 672), the presumption prevails only in the absence of evidence of renunciation. *Mahoney v. Martin*, 72 Kan. 406 (83 Pac. 982). The donee may, notwithstanding the presumption, renounce the gift, and thereby non-acceptance

is proved. *Gray v. Nelson,* 77 Iowa 63, and cases above cited. The gift in the present case would, in view of the judgments against the donee, be of at least doubtful benefit to her. There might be various reasons (whether morally good or bad is legally immaterial), why she should prefer that its benefits go to her brothers and sisters, or other heirs of her father, rather than to her creditors. It is not argued that the delay in renouncing is such as to be evidence of acceptance. The record does not set out the original answer in this suit of the judgment debtor. By her substituted answer she pleads the renunciation. The renunciation is fully established. The grantee in the deed, while by its acceptance he bound himself to pay the $25,000 and the interest to whoever would, under the law, be entitled to it, could not, by his agreement to pay it, bind the judgment debtor to an acceptance of the obligation as one to pay her, or bind her to acceptance of it as a gift to her.—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, KINDIG, WAGNER, and GRIMM, JJ., concur.

STEVENS, J., not participating.

DE GRAFF, J., dissents.

DE GRAFF, J. (dissenting).—I respectfully dissent to the pronouncement made by the majority as to the interpretation of the facts and the law as applied to the facts. This is an action in the nature of a creditor's bill. The plaintiff was the judgment creditor of the defendant Eda Hedges, and when he commenced his equitable action, in conformity to Section 11815 *et seq.,* Code of 1927, he thereby "effectually secured by the filing of a bill in chancery" an equitable lien; "for it has long been the settled doctrine in equity that the filing of such a bill in chancery has the effect of creating a specific equitable lien upon the thing or property sought to be subjected to the execution, for the reason, perhaps, that the commencement of such a suit operates as a *lis pendens* notice, and stops all successful alienation of the property in question, and keeps it within the control and jurisdiction of the court." *Bridgman & Co. v. McKissick,* 15 Iowa 260, l. c. 265.

The plaintiff's equitable lien is not only reinforced, but recognized by the very terms of our statute. Section 11817,

Code of 1927. The plaintiff, therefore, by the commencement of his equitable action secured a right which the law could not give him, and this is the very foundation and origin of equity jurisprudence. The plaintiff thereby had a superior claim to that of any creditor, "whether senior or junior," because he was the first to "commence his equitable proceeding to reach and subject the property to execution," obtaining thereby "not only a specific lien which will arrest and control the alienation thereof, but which will give him a superior equity on the same for the satisfaction of his claim." *Bridgman & Co. v. McKissick,* supra. It may be observed at this point, under the facts of the case at bar, that the defendant Wayland A. Hopley was, as an individual, the owner, as an assignee, of a judgment against his codefendant Eda Hedges, and, had he begun an action, as plaintiff did, but prior thereto, he would have had a superior equitable lien, and his rights under the judgment held by him would have been enforcible. In his answer to plaintiff's petition in equity, he pleaded and claimed that he had a right or equity by virtue of his assignment of the annuity in question, and that he had an agreement with Eda that this annuity had been assigned to him to satisfy his assigned judgment against Eda. Neither plea nor agreement was denied by Eda in any manner. Who, then, claims that Eda did not have an equitable interest under the reservation of the deed executed by Peter Hopley to Wayland Hopley of the land in question? Does Wayland Hopley? Certainly not. Does Eda herself? No. It is quite obvious that, when she finally renounced, it was simply for the purpose of defeating the plaintiff judgment creditor, and it was a fraudulent act on her part to attempt to renounce some 19 months after the commencement of this action by plaintiff, during which time Eda was bound to know, as a matter of law, that the plaintiff judgment creditor had an established specific equitable lien on her definite and fixed rights and equity which she then and there did have.

The facts disclose that, on January 14, 1922, Peter Hopley, a resident of Cass County, Iowa, executed and delivered in escrow a deed to his son, Wayland A. Hopley, covering a large tract of farm land in Cass County. Upon the death of Peter, in March, 1926, the deed was delivered to the grantee, and filed for record by him on the 22d day of May, 1926.

The appellee Eda Hedges is the daughter of Peter Hopley and the sister of Wayland A. Hopley, grantee. The deed contained the following clause, material to the consideration of this appeal:

"Also subject to grantee, herein, his heirs or assigns paying to Wayland A. Hopley, trustee, for the benefit of Eda May Hedges, the sum of twenty-five thousand dollars ($25,000) within ten years after the death of the grantor herein, with interest thereon at five per cent per annum from and after March 1st following the death of said grantor herein, payable annually on March 1st of each year to said Eda Hedges, during her natural life and at her death the said principal sum of $25,000 shall go to her surviving brothers and sisters share and share alike, said Wayland A. Hopley being named as the trustee of said trust fund without bond as such trustee."

On February 9, 1928, the defendant Eda Hedges signed and acknowledged a renunciation and rejection of "any and all benefits, interests, gifts and annuities which do, may or might accrue to me under and by the terms of a certain warranty deed made and executed by my father, Peter Hopley, on the 14th day of January, 1922, to Wayland A. Hopley," and by said instrument "did renounce, refuse and reject any and all provisions of said deed whether the same merely constituted a contract obligation in my behalf, or as a beneficiary of a trust, either actual, constructive, resulting or implied."

Up to the time of her renunciation, Eda Hedges was in full possession of her rights to this annuity. It was while she was in full possession of her right that the equitable proceedings of the plaintiff established a lien upon that right. She had absolute and uncontrolled ownership of the property or lien in the land, measured by the amount of the annuity.

"As a general rule, it is contrary to sound public policy to permit a person to have the absolute and uncontrolled ownership of property for his own purposes, and to be able at the same time to keep it from his honest creditors." 5 Paige's Ch. Rep. (N. Y.) 583, 586.

At the outset, we inquire what is an "equitable interest" in property? Generally speaking, it is some definite right or interest in the property such as will furnish ground for equitable

relief against the trustee or any person asserting a hostile right or interest. *Curtis v. Reilly*, 188 Iowa 1217. See 3 Words & Phrases (3d Ser.) 309. The eminent Pomeroy, in his masterful work on Equity Jurisprudence, states:

"Equitable primary rights, interests, and estates may exist in things real and in things personal, in lands and in chattels." 1 Pomeroy's Equity Jurisprudence (3d Ed.) 167, Section 146.

In citing some of the important kinds of equitable liens which are recognized as following under this branch of jurisdiction, he includes "those resulting from charges on property by will or by deed." Ibid. 192, Section 167.

It may be observed, in the consideration of this cause of action, that we are not dealing with a garnishment proceeding, or with any of the applicable rules or statutes in relation to such a proceeding. Garnishment is purely statutory. See *Malone v. Moore*, 204 Iowa 625, with cases cited therein. In the instant case we are dealing with an "equitable interest or right," which is specifically defined and included under the provisions of Section 11815, Code of 1927, hereinafter quoted.

This case is in equity, and not in law; and even though our Code did not contain Section 11815, the fundamental principles of equity jurisprudence would give to the plaintiff herein the same equitable right and remedy. This is made plain by the mere reading of Pomeroy, supra, on Equitable Rights and Remedies.

The primary question for decision is whether or not the trial court, under the instant facts, erred in construing the renunciation by the defendant to be, as to her then existing creditors, a valid renunciation of any right, title, interest, or equity to which the defendant was entitled under the warranty deed. It must be borne in mind that the deed of Peter Hopley had been accepted by the grantee named therein, and consequently the grantee was bound by its terms, one of which was to pay Eda Hedges a certain annual income. The acceptance by the grantee, with the reservation, *prima facie* immediately vested in Eda Hedges a definite, certain, and ascertainable property right. There is no ambiguity in the language of the deed. It did make the sisters and brothers of Eda Hedges the reversioners. It is quite obvious that the reservation in the deed in favor of

Eda Hedges *prima facie* created in her an equitable interest. Pomeroy, supra. It became a burden upon the land, and it was a covenant which would run with the land, and was attached to the land, which the grantee, by his acceptance of the deed, assumed to pay.

At the time of filing of the renunciation, this suit had been pending since July 6, 1926. The renunciation was filed February 9, 1928, which was 19 months and 3 days after the commencement of this suit. At no place in the record is there a denial of the benefits under the annuity by Eda Hedges for all that period of time. On the contrary, the defendant Wayland Hopley, grantee, had filed his answer, claiming the annuity as a creditor of Eda Hedges', "and that, after he has satisfied such obligation as the said Eda Hedges owed him, he will be indebted to the said Eda Hedges upon said annuity, if she is still living."

Certain stipulations were entered into between the parties upon the trial, one of which was that Wayland Hopley purchased, on May 26, 1926, for the sum of $500, a judgment in favor of L. A. Andrew, receiver of the Citizens' State Bank of Anita, Iowa, which judgment was against Eda Hedges, and was in the sum of $8,781.50, and that said judgment is now the property of said Wayland Hopley, and that it was the intention of said Wayland Hopley to retain the annual sum of $1,250 per annum until said judgment was satisfied. It was further stipulated that the written renunciation of Eda Hedges, filed as stated herein, was the first notice that Wayland Hopley had from his sister Eda in reference to her intention to renounce, and that Eda Hedges had never assigned or taken any action in relation to said annuity. It was further stipulated that Eda Hedges was insolvent, and had been for more than five years last past. These stipulations were made on the 16th day of May, 1928, upon the commencement of the trial.

The defendant Wayland Hopley had filed no lien against the annuity in his hands, but made the bare claim that his sister was to satisfy her debt to him out of the annuity. There must have been an agreement between them to this effect, if such an arrangement had been made. The said answer of Wayland Hopley was filed in November, 1927. Nothing could be more clear than that Eda Hedges must have consented to the payment to her brother of her debt to him, which, even by implica-

tion, is so strong as to amount to an express assent that she had accepted the annuity.

In the absence of any evidence to the contrary, acceptance of this annuity will be presumed. There is not a word in the record that she did not intend to collect the annuity, until she filed her renunciation, which, under this record, came too late.

"Neither is it necessary that the beneficiary expressly accept the trust, as, it being for his benefit, his acceptance will be presumed * * *." 39 Cyc. 79, Paragraph 7.

"The authorities seem to be unanimous that, where a conveyance is made of real estate upon condition that the grantee shall pay a specified sum of money to a third person, or pay the debts of the grantor or of some third person, the acceptance of the conveyance by the grantee with such clause in the deed creates a covenant on the part of the grantee to discharge the obligation imposed, and creates the relation of trustee and *cestui que trust* between the grantee and the persons for whose benefit the payment is to be made, without any act or assent on the part of the beneficiary." *Koch v. Streuter*, 232 Ill. 594, 599.

See, also, Underhill on Trusts & Trustees (4th Ed.) 38.

The plaintiff was a holder of judgments against the defendant Eda Hedges. Our statute provides:

"At any time after the rendition of a judgment, an action by equitable proceedings may be brought to subject any property, money, rights, credits, or interest therein belonging to the defendant to the satisfaction of such judgment. In such action, persons indebted to the judgment debtor, or holding any property or money in which such debtor has any interest, or the evidences of securities for the same, may be made defendants." Section 11815, Code of 1927.

It is beyond question that the lien of a judgment under such provisions attaches to any equitable interest of the judgment debtor's, and it may be subjected to the satisfaction of the judgment by proper proceedings in equity for that purpose. Even a junior creditor, by first instituting equitable proceedings to subject property to his debt, acquires priority of lien over a senior judgment creditor less diligent. *Bridgman & Co. v. McKissick*, 15 Iowa 260, 264.

The case of *Pinkham v. Pinkham*, 60 Neb. 600 (83 N. W. 837), is quite similar to the case at bar, on both the fact and the law side. In that case there was a reservation in the deed, providing for the payment to a third person of $50 per annum by the grantee for 10 years. It was held that the third person had an equitable lien on the land, which must be satisfied by the grantee before the title was complete. In that deed the grantee also accepted, with the further reservation that he would support the grantor during the balance of his life. Upon the death of the grantor, his heirs commenced an action to quiet the title in the land as against the grantee, in favor of themselves. The Nebraska court held that the title should be quieted, but specifically held that, nevertheless, the equitable interest of the third person—to wit, the annuity of $50—would follow the title into the hands of the reversioners, the heirs, and was not extinguished; in other words, that the equitable interest held by the third party was absolute when the grantee accepted the deed.

It follows, therefore, that, when Eda Hedges, the third party herein, received an equitable interest, measured by the amount of annuity given her, payable annually, this interest was reached by the plaintiff before Eda Hedges attempted to alienate or release same by her renunciation. The defendant Wayland A. Hopley accepted the deed with its reservation of $1,250, payable annually to Eda Hedges, and in his answer he admits that he owes her that amount. In her answer she merely entered a general denial, and not until about 19 months after the instant suit was commenced did she make her renunciation.

It is immaterial what we call the $1,250. It is sufficient to say that it was a definite amount, to be paid her at a definite fixed date each year. I refuse to fly into the face of well established precedent, and hold that Eda Hedges did not have a definite equitable interest, measured by the annual income which was given to her by her father by the reservation in the deed. The conveyance in question is made subject to a reservation clause in the deed itself to pay her an annuity, and this in itself creates a covenant on the part of grantee to discharge the obligation imposed upon and running with the land. 27 Cyc. 981. See *Koch v. Streuter*, supra. Eda Hedges, therefore, acquired an equitable interest in property when the acceptance was made by the grantee, and she cannot renounce in this case,

as she attempted to do, to defeat a creditor's lien, under Section 11815. Such an act savors of connivance, and is a mere subterfuge.

The case at bar is not analogous to those cases involving legacies or gifts dependent on the exercise of discretionary power by the trustee or others. In such cases, there is nothing definite, as the legacies are limited, and conditioned by authority of the trustees to pay the same. In such cases it may be said that the legatee has nothing. In *Funk v. Grulke,* 204 Iowa 314, this court, speaking through Justice Evans, defines such a situation, and it is said:

"The codicil conferred upon her no title to property. It gave her no power over the trustees. It left her a mendicant, at the mercy of their future judgment. There was no understanding that she was to receive her one-sixth share provided for her in the will, or any part thereof."

See, also, *Ober v. Seegmiller,* 180 Iowa 462; *Kiffner v. Kiffner,* 185 Iowa 1064; *Darling v. Dodge,* 200 Iowa 1303.

At the time of renunciation by the legatee in the above cases, such legatee was not in possession of anything definite, ascertained, or established. This situation makes the instant case distinguishable from the foregoing cases in both fact and principle.

The grant in question did not create a condition subsequent, but it did create an equitable interest by reservation. See *Doescher v. Spratt,* 61 Minn. 326 (63 N. W. 736). The instant deed is unconditional.

"There is no provision for re-entry in this deed. Such being the case, the clause will not be construed as a condition subsequent, but as creating a lien to secure the payment of the stipulated annuity * * *." Ibid., page 329.

The right, title, and interest of Eda Hedges in the income or annuity became vested before her renunciation, and plaintiff established his equitable right in certain income or annuities belonging to Eda Hedges before her renunciation. A vested right is an immediate fixed right of present and future enjoyment. Rights are vested when the right of enjoyment, present or prospective, has become the property of some particular per-

son as a present interest. The definition is well expressed in *Edworthy v. Iowa Sav. & L. Assn.*, 114 Iowa 220, and in *Pearsall v. Great Northern R. Co.*, 161 U. S. 646 (40 L. Ed. 838). Ownership of an equitable interest was complete in Eda Hedges. She may waive, release, or renounce, as she desires, and extinguish her right to her interest, but not to the detriment of a judgment creditor who had, under equitable proceedings, under Section 11815, fastened upon her interest an equitable right before she renounced.

We deem it unnecessary to distinguish and differentiate the legal concepts ''reservation,'' ''exception,'' and ''condition subsequent.'' It is sufficient to cite a few cases involving these legal distinctions. *Dodd v. Rotterman,* 330 Ill. 362 (161 N. E. 756); *Nichols v. Fernald,* 82 N. H. 186 (131 Atl. 836); *Dunne v. Minsor,* 312 Ill. 333 (143 N. E. 842); *Grant v. Haymes,* 164 Ga. 371 (138 S. E. 892); *Hoffmaster v. Baird,* 87 Pa. Super. Ct. 369; *Hall v. Quinn,* 190 N. C. 326 (130 S. E. 18).

In conclusion, it must be said that Eda Hedges had something, and this something was a right to a definite, ascertainable amount, payable at a fixed time, payable out of the grantee's fund, which he himself must raise. Wayland A. Hopley recorded the right which acquired. The beneficiary, at no time prior to the filing of the petition herein, made any disclaimer or denial of her rights in the premises, and the facts and circumstances of this case are sufficient to show an acceptance by the beneficiary of the right which had vested in her. In brief, Eda Hedges renounced too late to defeat the right asserted by this plaintiff, and asserted in the manner provided by law.

The decree entered by the trial court should be reversed.